Peter Daniel THOMAS, Plaintiff,

v.

Sgt. CULBERG—Shield 31572, N.Y.P.D. and other unnamed members of the N.Y.P.D., Defendants.

No. 88 Civ. 5440 (RWS).

United States District Court, S.D. New York.

July 11, 1990.

78

Peter Daniel Thomas, New York City, pro se.

Victor A. Kovner, Corp. Counsel of the City of New York, New York City (Georgia Pestana, Asst. Corp. Counsel of counsel), for defendants.

## OPINION

SWEET, District Judge.

Defendant Sergeant Culbert ("Culbert") has moved this court pursuant to Rule 56 of the Federal Rules of Civil Procedure for summary judgment against plaintiff, *pro se*, Peter Daniel Thomas ("Thomas").

*Parties*

Thomas is the father of David Thomas.

Culbert is a sergeant with the New York City Police Department, Shield # 1572.

## Prior Proceedings

Thomas filed this action on or about July 25, 1988 against defendants Beth Israel Medical Center, State Family Court Judge Mary Bednar, City of New York Human Resources Administration ("H.R.A."), Special Services for Children ("S.S.C."), William Grinker, as Commissioner of H.R.A. ("Commissioner") and Herman D. Wilson, caseworker with S.S.C. ("Wilson"). Thomas alleged among other things, that defendants unlawfully removed his son from his custody on July 12, 1988. On November 4, 1988 defendants moved to dismiss the complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) or, in the alternative, for summary judgment pursuant to Federal Rule of Civil Procedure 56. On March 20, 1989, this Court dismissed the complaint against Beth Israel Medical Center and Judge Bednar with prejudice and dismissed the complaint against the city defendants with leave to replead within twenty days.

On or about April 6, 1989, Thomas filed an amended complaint identical to the original complaint with the exception of adding Culbert to the already named city defendants. The city defendants moved to dismiss the amended complaint on or about June 7, 1989. By memorandum decision dated September 27, 1989, this Court dismissed the complaint against H.R.A., S.S.C., the Commissioner and Wilson with prejudice. The court found, however, that assuming the truth of all the facts alleged in the amended complaint, dismissal of the claims against the police officer was inappropriate at that time. In a memorandum opinion dated October 2, 1989, Thomas' motion by order to show cause for a preliminary injunction seeking return of his child was denied.

Culbert moved for summary judgment on the claims against him on April 20, 1990. The motion was considered fully submitted as of April 27, 1990.

## Facts

The facts of this dispute are set forth in detail in the September 29, 1989 opinion, familiarity with which is assumed.

## Standards for Summary Judgment

To grant summary judgment the court must determine that no genuine issue of material fact exists and that the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). The court's responsibility is not to resolve disputed issues of fact, *Donahue v. Windsor Locks Bd. of Fire Comm'rs*, 834 F.2d 54, 57 (2d Cir. 1987), but to determine whether there are any factual issues to be tried, while resolving ambiguities and drawing inferences against the moving party. *Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 249, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986) (citing *Adickes v. S.H. Kress & Co., Inc.*, 398 U.S. 144, 158–59, 90 S.Ct. 1598, 1608–09, 26 L.Ed.2d 142 (1970)). Summary judgment enables the court to dispose of meritless claims before becoming entrenched in a costly trial. *Donahue*, 834 F.2d at 58, (citing *Knight v. U.S. Fire Ins. Co.*, 804 F.2d 9, 12 (2d Cir.1986) *cert. denied*, 480 U.S. 932, 107 S.Ct. 1570, 94 L.Ed.2d 762 (1987)).

## Probable Cause to Arrest

■ To allege false arrest a plaintiff has the burden of demonstrating lack of probable cause for the arrest. *See e.g., Alberts v. City of New York*, 549 F.Supp. 227, 231 (S.D.N.Y.1982). Probable cause to arrest exists when officers "have knowledge or reasonably trustworthy information of facts and circumstances that are sufficient in themselves to warrant a person of reasonable caution to believe that (1) an offense has been or is being committed (2) by the person being arrested." *United States v. Ceballos*, 812 F.2d 42, 50 (2d Cir.1987) (quoting *United States v. Fisher*, 702 F.2d 372, 375 (2d Cir.1983)).

■ The existence of probable cause is measured as of the moment of the arrest, not on later developments. *Beck v. Ohio*, 379 U.S. 89, 93, 85 S.Ct. 223, 226, 13 L.Ed.2d 142 (1964). The validity of the arrest depends only on the existence of probable cause at the time of the arrest. Whether the suspect was acquitted later of the charges for which he was arrested is irrelevant to the determination of probable cause. *Michigan v. DeFillippo*, 443 U.S.

31, 36, 99 S.Ct. 2627, 2631, 61 L.Ed.2d 343 (1979).

Probable cause exists "when facts and circumstances within the officers' knowledge ... are 'sufficient in themselves to warrant a man of reasonable caution in the belief that' an offense has been or is being committed." *U.S. v. Fox*, 788 F.2d 905, 907 (2d Cir.1986) (quoting *Brinegar v. U.S.*, 338 U.S. 160, 175–76, 69 S.Ct. 1302, 1310–11, 93 L.Ed. 1879 (1949)). A showing that a fair probability of criminal activity existed, based on the totality of circumstances, is sufficient to establish probable cause. *See Illinois v. Gates*, 462 U.S. 213, 230–231, 243–44 n. 13, 103 S.Ct. 2317, 2328–2329, 2334–2335 n. 13, 76 L.Ed.2d 527 (1983); *Davis v. Little*, 851 F.2d 605, 607 (2d Cir.1988); *Parker v. Hearn*, 695 F.Supp. 1421, 1424 (E.D.N.Y.1988). Neither a *prima facie* showing of criminal activity, nor a showing that it is more probable than not that a crime has been committed is required. *United States v. Cruz*, 834 F.2d 47, 50 (2d Cir.1987), *cert. denied*, 484 U.S. 1077, 108 S.Ct. 1056, 98 L.Ed.2d 1018 (1988). Officers have probable cause to arrest if they receive "information from some person—normally the putative victim or eyewitness—who it seems reasonable to believe is telling the truth." *Daniels v. United States*, 393 F.2d 359, 361 (D.C.Cir. 1968).

Although Thomas was not charged criminally, the ultimate disposition of the arrest is irrelevant, and the ultimate exoneration of the arrestee does not establish that the arrest was invalid. *Winfield v. United States*, 430 F.Supp. 912, 914 (S.D. N.Y.1977), (citing *Pierson v. Ray*, 386 U.S. 547, 555, 87 S.Ct. 1213, 1218, 18 L.Ed.2d 288 (1967)). Based on Culbert's observations and discussions with Thomas and the eyewitness, Culbert could reasonably conclude that Thomas was guilty of assault in the third degree because he recklessly caused physical injury to his son or at least of disorderly conduct.

Based on the Family Court testimony submitted with the instant motion, Culbert received an eyewitness report, interviewed the eyewitness, spoke with Thomas, and observed David's scrapes and bruises as well as his dirty clothing at the time of the arrest. Additionally, as Culbert approached, according to Thomas, Thomas stated he had been over at the site of the trash can and that he and David were playing with newspapers there. In Family Court, Thomas admitted to having held his son David by the feet over a trash can. Although Thomas also stated that this act was a joke and that the women who had called to report it to the police was crazy, Culbert had an opportunity to interview the eyewitness who called and was able to formulate an opinion as to whether the eyewitness was "crazy" or the call was a "prank." Whether or not, in Thomas' presence, David denied any abuse does not preclude a finding that Culbert had probable cause, based on the foregoing to arrest Thomas. *See Robison v. Via*, 821 F.2d 913, 920 (2d Cir.1987).

Although a reasonable person could conclude that the totality of circumstances gave Culbert probable cause to arrest, on a motion for summary judgment, without the opportunity to evaluate Culbert's reaction to the eyewitness—whether he thought she was crazy and the call was a prank, the material facts in dispute on this motion—summary judgment can not be granted. If the eyewitness was crazy as Thomas alleges it cannot be said that no reasonable juror could find an absence of probable cause to arrest.

Nonetheless, the complaint against Thomas must be dismissed because Culbert is entitled to qualified immunity. Government officials such as police officers are entitled to qualified immunity for discretionary acts performed in the scope of their employment. *See Neu v. Corcoran*, 869 F.2d 662, 665 (2d Cir.1989), *cert. denied*, —— U.S. ——, 110 S.Ct. 66, 107 L.Ed.2d 33 (1989). In the Second Circuit a defendant is entitled to qualified immunity:

> by showing that "it was not clear at the time of the official act that the interest asserted by the plaintiff was protected by a federal statute or the Constitution;" or that "it was not clear at the time of the acts at issue that an exception did not permit those acts;" or that "it was objectively reasonable for [the official] to believe that his acts did not violate [plaintiff's] rights."

*Krause v. Bennett,* 887 F.2d 362, 368 (2d Cir.1989) (quoting *Robison v. Via,* 821 F.2d 913, 920–21 (2d Cir.1987)). For Culbert to be entitled to qualified immunity under the third method set forth in *Robison* the undisputed facts must show either "(a) that it was objectively reasonable for the officer to believe that probable cause existed, *or* (b) that officers of reasonable competence could disagree on whether the probable cause test was met." *Robison,* 821 F.2d at 921 (citing *Malley v. Briggs,* 475 U.S. 335, 341, 106 S.Ct. 1092, 1096, 89 L.Ed.2d 271 (1986)) (emphasis added).

■ Consequently, for Culbert to qualify for immunity on this summary judgment motion, the court must find that all reasonable jurors would find that officers of reasonable competence could at least disagree on whether the probable cause test was met. In other words, based on the nondisputed evidence, even assuming the eyewitness was crazy, to defeat qualified immunity, the record must show it to be "obvious that no reasonably competent officer would have concluded that a[n arrest] should issue." *Robison,* 821 F.2d at 921.

■ Culbert is entitled to qualified immunity. Culbert responded to a 911 call and he interviewed an eyewitness of the event. Even if the witness were crazy—and Culbert thought so after the interview—Culbert entered the park and found the two persons reported by the eyewitness. As Culbert approached, Thomas began declaring that it was all a mistake, he had been in the area of the trash can and there was a crazy woman who called the police there, thus at least validating some of the information given by the eyewitness report. Moreover, Culbert had the opportunity to see and did see the disheveled dirty child with both old and new

scrapes and bruises, some large. Culbert also had the opportunity to speak with both father and son. Although the son, in the presence of his father (and after the arrest in a separate room) denied any mistreatment, all reasonable jurors would agree that competent officers could at least disagree on whether there existed probable cause to arrest Thomas.[1] Although the existence of probable cause may be questionable at the time of the arrest, if it is not *"clearly"* lacking, the officer will be shielded by qualified immunity from civil liability. *Floyd v. Farrell,* 765 F.2d 1, 5 (1st Cir.1985) (emphasis in original).

Qualified immunity is intended to protect government officials from being inhibited in situations precisely as this one. Although Thomas may have been correct in asserting that there was no abuse occurring that day and that Culbert at the time of the arrest could not absolutely establish that Thomas had held his child upside down in a garbage can, "the possibility that there was no abuse must give way to protection of the child where a reasonable basis exists for the belief that such protection is necessary." *Doe v. Conn. Dept of Children & Youth Serv.,* 712 F.Supp. 277, 286 (D.Conn. 1989).

*Conclusion*

Based on the undisputed material facts, and construing the disputed material facts in the favor of the non-movant Thomas, the motion for summary judgment is granted on the ground of qualified immunity and the complaint shall be dismissed against Culbert.

It is so ordered.

---

1. Thomas' transfer to Bellevue Hospital for psychiatric evaluation is similarly protected. Under Section 9.41 of the New York Mental Hygiene Law, a police officer may take into custody and remove to an appropriate hospital "any person who appears to be mentally ill and is conducting himself in a manner which is likely to result in serious harm to himself or to others." New York Mental Hygiene Law does not require that the threat of substantial harm to oneself or others be evidenced by overt act, attempts or threats. Threat of harm can be evidenced by neglect or refusal to care for themselves. *Matter of Carl C,* 126 A.D.2d 640, 511 N.Y.S.2d 144 (2d Dept 1987). In addition to the pre-arrest behavior observed, Culbert's uncontradicted testimony that Thomas babbled incoherently after the arrest similarly permits the conclusion that no reasonable juror could find that reasonably competent officers would at least disagree on whether there existed cause to send Thomas to Bellevue.