**Harry STEINER, Plaintiff,**

v.

**CITY OF NEW YORK, Patrick Smyth, et al., Defendant.**

**No. 90–CV–1593 (JG).**

United States District Court, E.D. New York.

March 14, 1996.

Elliott C. Winograd, Carole A. Burns & Associates, Mineola, New York, for Plaintiff.

Paul A. Crotty, Corporation Counsel of the City of New York by Paul Mario Frangiose, New York City, for Defendant.

*MEMORANDUM AND ORDER*

GLEESON, District Judge:

Plaintiff Harry Steiner alleges that he was twice falsely arrested and maliciously prosecuted, in violation of 42 U.S.C. § 1983 and state law. Steiner named eleven individual New York City police officers and the City of New York ("the City") as defendants in this action. The claims against the City have been bifurcated. The individual defendants

(referred to herein as "the defendants") and plaintiffs have all moved for summary judgment. The plaintiff's motion was denied on December 1, 1995. For the reasons set forth below, the defendants' motion is granted.

### FACTS

#### A. The February 9, 1989, Arrest

On the evening of February 9, 1989, Officers Kevin Katta and Patrick Smyth were on patrol in a marked radio car in the 62nd precinct in Brooklyn, New York. They received a call to respond to a dispute involving a man with a gun at 2035 83rd Street, Brooklyn, New York, and responded immediately. Upon arriving at the scene, Katta and Smyth were met by Joseph Schiavone. Schiavone said that he had just been involved in an altercation with Steiner, who had pointed a silver revolver at Schiavone and threatened to kill him. Schiavone also said that his neighbor, Ruth Augen, witnessed the incident. Katta and Smyth then spoke with Augen, who told them that Steiner had run at Schiavone on the street, pointed a gun at him, and said something to him.[1]

Katta and Smyth went to Steiner's home, banged on the door, and identified themselves as police officers. It is unclear how many officers approached Steiner's door, whether the officers threatened to break down the door, and whether Steiner voluntarily consented to a search of his home. Steiner opened the door, the officers searched his home and found several weapons, including a silver revolver, and subsequently arrested Steiner, charging him with reckless endangerment, criminal possession of a weapon, and menacing.

#### B. The March 21, 1989, Arrest

On March 21, 1989, at approximately 2:00 P.M., Sergeant Dennis Magoolaghan and Officer Richard Eizentier, in response to a radio call, arrived at Steiner's house. Magoolaghan interviewed Steiner, Schiavone, and several neighbors who confirmed that there had been a vicious fight between Steiner (who was helped by his brother, Fred Steiner) and Schiavone. Steiner[2] showed Magoolaghan the broken windshield on his car and told Magoolaghan that Schiavone had broken it with a baseball bat. He also informed Magoolaghan that Schiavone had violated an Order of Protection that Steiner had filed with the 62nd precinct.

For his part, Schiavone showed Magoolaghan an Order of Protection that he had obtained against Steiner. Magoolaghan heard conflicting stories recounting what had transpired from the various people he interviewed. One such person, whom Magoolaghan determined was credible, said that the fight began when Steiner tried to run over Schiavone with his car.

Magoolaghan left the scene without making an arrest. The Steiners were taken to the hospital and Magoolaghan and Eizentier returned to the station house. Later that day, Schiavone appeared at the 62nd precinct and filed a complaint against Steiner, alleging that Steiner had assaulted him and violated an Order of Protection, which Schiavone produced for Officer Kevin Blanche at the 62nd precinct. Officer Blanche observed bite marks on Schiavone's body and confirmed that the Order was valid. After conferring with his captain at the precinct, Magoolaghan determined that Schiavone's story was better supported by the neighbors' accounts than Steiner's, and therefore it was proper to arrest Steiner for violating the Order of Protection. Steiner was arrested at the hospital for assault in the second degree and criminal contempt in the second degree.

#### C. The Dismissal Of The Charges Against Steiner

On May 10, 1990, both prosecutions of Steiner were dismissed in the interests of

---

1. At oral argument on this motion, Steiner's attorney argued for the first time that there is a genuine issue as to whether Augen actually spoke to Officers Katta and Smyth before Steiner was arrested. As set forth *infra*, pp. 339–340, that contention has no merit.

2. Unless otherwise indicated, "Steiner" refers to the plaintiff, Harry Steiner.

justice.[3] On that day, Schiavone verbally attacked, spat on, and hit Steiner in the courthouse. Based in large part on that conduct, the prosecutor determined that Schiavone was not a credible witness.

In dismissing the case, the court addressed both Steiner and Schiavone directly, and admonished them to end this modern-day Hatfields-and-McCoys feud:

> Now, I think, based on everything that I have heard, so far, there is one long history here between the two people.... [W]ho started it[,] I am not in the position to say, but for as long, and I am certainly not prescribing ultimate blame for this long, unfortunate history, but I can say this; for as long as the two of you gentlemen live in proximity to each other, there will be occasions when, even if you will follow my admonition to stay away from each other, that you may come in contact with each other in the neighborhood, on the street, local businesses, even a neighbor's house, it is better for each of you and your families to just keep your peace and keep your distance. Stay away from each other, whatever it is, who sees the other first, walk the other way. Stay away. Keep your peace and keep your distance. You are both adults. Mr. Steiner, you have never had any involvement with the law. I can see it's your first. Mr. Schiavone, you had an unfortunate involvement as a kid a very long time ago, so as an adult [y]ou haven't had any problems[.] [Y]ou are both adults. I gather from what you folks—what the lawyers have said, both family-men, both gainfully employed. You are not criminals. You don't belong here in criminal court.

(Steiner Affidavit, Ex. N at 49–50.)

### D. *The Commencement Of This Action*

On May 9, 1990, the day before the charges against Steiner were dismissed, Steiner commenced this action, naming as defendants the City of New York, the New York City Police Department, "Various (as of yet unidentified) Police Officers," the Kings County District Attorney, and "Various (as of yet unidentified) Assistant District Attorneys," and alleging violations of his Fourth, Sixth, and Fourteenth Amendment rights.

On April 6, 1992, Steiner filed an amended complaint against the City, the police commissioner, former police commissioners, four officers of the 62nd precinct—"James Conrad," "Jane Practos," "Kevin Katta," and "John Smith"—and "John and Jane Does 1 through 10," asserting the § 1983 claims and supplemental state law claims of false arrest/imprisonment, malicious prosecution, assault and battery, and negligent performance of duties. The individual defendants named in the first amended complaint did not answer this complaint because they were not served with it.

On October 9, 1992, Steiner filed a second amended complaint against the City of New York and eleven named police officers of the 62nd precinct, again alleging false arrest and malicious prosecution in violation of his Fourth and Fourteenth Amendment rights.[4] All individual officers named in the second amended complaint raised a statute of limitations defense in their answer.

Defendants have filed a motion for summary judgment, arguing that: (1) probable cause existed to support both of plaintiff's arrests; (2) plaintiff cannot prove that the prosecutions of him were not supported by probable cause or that they terminated in his favor; (3) the § 1983 claims against the individual officers are time-barred; (4) the individual officers are qualifiedly immune from suit; and (5) plaintiff's state law claims are barred for failure to file a timely notice of claim.

### DISCUSSION

### A. *Qualified Immunity*

Defendants argue that they are entitled to qualified immunity with respect to the

---

3. *See* Plaintiff's Local Rule 3(g) Statement at 4, 7–8.

4. Steiner has voluntarily discontinued his action against Officer Frank Scotto. The remaining defendants in this action are the City of New York and police officers Patrick Smyth, Kevin Katta, John Pirozzi, Daniel Bahno, Sandra Richardson, Barbara Prato, Kevin Blanche, Dennis Magoolaghan, Richard Eizentier, and Brendan Doherty.

false arrest and malicious prosecution claims because it was objectively reasonable at the time of each arrest for the arresting officers to believe that probable cause existed for Steiner's arrest.

■ Qualified immunity shields police officers from civil liability where the performance of their discretionary functions "does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982); *Mitchell v. Forsyth*, 472 U.S. 511, 516, 105 S.Ct. 2806, 2810, 86 L.Ed.2d 411 (1985). In this case, the right at issue—to be free from arrest absent probable cause—is a clearly established constitutional right.

■ An officer may also establish qualified immunity by showing that, notwithstanding a violation of a clearly established constitutional or statutory right, it was objectively reasonable for him to believe his actions did not violate this right. *Robison v. Via*, 821 F.2d 913 (2d Cir.1987). Qualified immunity exists if the undisputed facts and all permissible inferences favorable to the plaintiff show either (a) that it was objectively reasonable for the officer to believe probable cause existed, or (b) that officers of reasonable competence could disagree on whether there was probable cause. *Id.* at 921; *see also Golino v. City of New Haven*, 950 F.2d 864, 870 (2d Cir.1991), *cert. denied*, 505 U.S. 1221, 112 S.Ct. 3032, 120 L.Ed.2d 902 (1992). Immunity ordinarily should be decided by the court when the facts concerning the availability of the defense are undisputed. *Oliveira v. Mayer*, 23 F.3d 642, 649 (2d Cir.1994), *cert. denied*, —— U.S. ——, 115 S.Ct. 721, 130 L.Ed.2d 627 (1995) (citing *Hunter v. Bryant*, 502 U.S. 224, 112 S.Ct. 534, 116 L.Ed.2d 589 (1991)).

■ Probable cause to arrest exists when officers have knowledge of, or reasonably trustworthy information about, facts and circumstances sufficient to warrant a person of reasonable caution to believe that an offense has been committed or is being committed by the person to be arrested. *Golino*, 950 F.2d at 870 (citing *Dunaway v. New York*, 442 U.S. 200, 99 S.Ct. 2248, 60 L.Ed.2d 824 (1979)). Probable cause requires only a probability, or a "substantial chance" of criminal activity, not an actual showing of criminal activity. *Illinois v. Gates*, 462 U.S. 213, 244 n. 13, 103 S.Ct. 2317, 2335 n. 13, 76 L.Ed.2d 527 (1983). "Officers have probable cause to arrest if they receive 'information from some person—normally the putative victim or eyewitness—who it seems reasonable to believe is telling the truth.'" *Thomas v. Culberg*, 741 F.Supp. 77 (S.D.N.Y.1990) (quoting *Daniels v. United States*, 393 F.2d 359, 361 (D.C.Cir.1968)).

In this case, the officers arrested Steiner on February 9, 1989, only after they (1) received a radio call indicating that an assault involving a gun had occurred; (2) spoke with a complainant—Schiavone—who told them Steiner had threatened to kill him with a silver revolver; (3) spoke with an eyewitness—Augen—who confirmed that Steiner had threatened Schiavone with a gun; and (4) recovered firearms, including a silver revolver, from Steiner's house.

■ Although Steiner now denies pointing a gun at Schiavone, Plaintiff's Local Rule 3(g) Statement at 2, and presumably denied it at the time, this is immaterial. Police officers are not obligated to adjudicate disputes on the spot, on pain of civil liability if they get it wrong. *See Lennon v. Miller*, 66 F.3d 416, 424 (2d Cir.1995) (police officers dealing with "street confrontation" are not required to obtain additional information from interested parties or discern fine points of law). The issue here is whether, based on the information imparted to the arresting officers, there is a genuine issue of fact as to the objective reasonableness of their view that probable cause to arrest Steiner was present.

In *Lennon v. Miller*, 66 F.3d 416 (2d Cir. 1995), the Second Circuit addressed this issue in a similar case. The feuding parties in that case were spouses. The husband, whose prior threats to the wife had been reported by her to the police, sought to obtain possession of a car from the wife. She called the police, who determined that he had the right to take the car, and arrested her for obstructing governmental administration when

she refused to get out of the car. That charge was subsequently dismissed, and the wife filed a § 1983 action against the officers. 66 F.3d at 418–19.

In reversing the district court's denial of the officers' motion for summary judgment, the Second Circuit concluded that qualified immunity was established as a matter of law. It explicitly recognized that the "doctrine of qualified immunity serves to protect police from liability and suit when they are required to make on-the-spot judgments in tense circumstances." *Id.* at 424. That is precisely what the officers were required to do in this case on February 9, 1989. Even if a rational jury could find that the officers lacked probable cause to arrest Steiner, "a rational jury could *not* find that the officers' judgment was so flawed that no reasonable officer would have made a similar choice." *Id.* at 424–25.

There are factual disputes as to whether the officers knew of the prior sordid history of the feud between Steiner and Schiavone.[5] However, these disputed facts do not create a genuine issue of fact for trial because even if this information was available to the arresting officers, reasonably competent officers could still disagree as to whether there was probable cause to arrest Steiner. Indeed, one might argue that, when there is reason to believe that a person has threatened the life of another at gunpoint, a prior history of a volatile relationship between the two counsels in *favor* of an arrest, not against it. In any event, because no rational juror could fail to conclude that reasonably competent officers could disagree on whether probable cause existed in such circumstances, summary judgment is appropriate.

As noted above, Steiner's counsel contended at oral argument that whether the officers spoke to Ms. Augen prior to the arrest is a genuine issue of fact requiring trial. This argument has no merit. First, the Defendants' Local Rule 3(g) statement contains a chronology of events that states that, before the arrest was made, the officers confirmed through Ms. Augen that Steiner had pointed a gun at Schiavone. *Id.* at 2. Plaintiff's Local Rule 3(g) Statement does not controvert that assertion. Rather, it confirms it, stating: "According to Officer Katta, upon interviewing a neighbor, Ruth Augen, Ms. Augen stated that plaintiff had yelled something at Mr. Schiavone while chasing him with a gun." *Id.* at 2. Having failed to controvert the defendants' assertion in his 3(g) submission, Steiner is deemed to have admitted it pursuant to express terms of the rule.

Second, even if Steiner had attempted to controvert this fact in his 3(g) statement, rather than at oral argument, his attempt would have failed. His argument is based entirely on a snippet from Schiavone's deposition testimony where he states that, after he told the police what happened, they went to Steiner's door. *See* Frangiose Declaration, Ex. B at 67. However, Schiavone's testimony also made clear that Augen had witnessed the incident, *id.*, Ex. B at 58, and Officer Katta testified unequivocally that he had spoken to Augen prior to the arrest. *Id.*, Ex. A at 9–10. There are no contradictory facts anywhere in the record. The belated effort to fend off summary judgment on this ground is without merit.

██ Regarding the arrest on March 21, 1989, it is undisputed that (1) Officer Magoolaghan was told by at least one person that Steiner had initiated the altercation with an assault on Schiavone; (2) Schiavone presented an Order of Protection against Steiner; and (3) Officer Blanche observed bite marks on Schiavone at the 62nd precinct. This gave rise to a reasonable belief that Steiner had violated the Order of Protection. While Steiner alleges that there were conflicting stories provided by neighbors, and that Magoolaghan should not have credited Schiavone's story over Steiner's, at the very least, reasonable officers could disagree as to

---

**5.** Steiner asserts that the arresting officers were aware of: (1) prior altercations between the Steiners and Schiavone; (2) a prior prosecution of Schiavone for assaulting one of the Steiners; (3) Schiavone's harassment of the Steiners; (4) Orders of Protection filed in favor of the Steiners against Schiavone; (5) Schiavone's violation of these Orders of Protection; (6) Schiavone's violent, malicious character; and (7) Steiner's call to the 62nd precinct two to three hours before the arrest, in which Steiner complained that Schiavone had threatened him with a bat.

whether, given all of the information available to the police, there was probable cause to arrest Steiner. Although the police might perhaps be criticized for not arresting Steiner *and* Schiavone, they may not properly be held liable for arresting Steiner.

In sum, taking all of Steiner's allegations as true, and drawing all reasonable inferences in his favor, the defendants have satisfied their burden of demonstrating that a reasonable jury could not find that the defendants' judgment was so flawed that no reasonable officer would have effected the arrests. Therefore, summary judgment is granted to the individual defendants on the grounds of qualified immunity. *Lennon v. Miller,* 66 F.3d at 424–25; *Robinson v. Via,* 821 F.2d at 921.

### B. *The False Arrest Claims*

Defendants argue that no genuine issue of material fact exists as to whether there was probable cause to arrest Steiner on February 9, 1989, and March 21, 1989. I do not reach this question because the defendants are entitled to summary judgment on the grounds of qualified immunity.

### C. *The Malicious Prosecution Claims*

For the reasons set forth above, the defendants are entitled to summary judgment, on qualified immunity grounds, on the § 1983 claim of malicious prosecution. *See Lennon v. Miller,* 66 F.3d 416, 425 (2d Cir. 1995). In addition, summary judgment is appropriate because Steiner cannot establish that the prosecutions of him were terminated in his favor.

A claim of malicious prosecution (under either § 1983 or New York law) requires proof of the following elements: (1) the defendants commenced or maintained a criminal proceeding against the plaintiff; (2) the proceeding terminated in favor of the plaintiff; (3) there was no probable cause for the criminal proceeding; and (4) the criminal proceeding was instituted by reason of actual malice. *Conway v. Village of Mount Kisco,*

750 F.2d 205 (2d Cir.1984) (citing *Russo v. New York,* 672 F.2d 1014, 1018 (2d Cir. 1982)); *see also Raysor v. Port Authority of New York and New Jersey,* 768 F.2d 34, 39 (2d Cir.1985), *cert. denied,* 475 U.S. 1027, 106 S.Ct. 1227, 89 L.Ed.2d 337 (1986). Under New York law, a "dismissal in the interest of justice" cannot provide the favorable termination required for a claim of malicious prosecution. *Singer v. Fulton County Sheriff,* 63 F.3d 110 (2d Cir.1995). While the Second Circuit has observed that the Appellate Division, First Department, has recently suggested that a dismissal in the interest of justice may not necessarily bar a subsequent claim for malicious prosecution, *Pinaud v. County of Suffolk,* 52 F.3d 1139 (2d Cir.1995) (citing *Hankins v. The Great Atlantic & Pacific Tea Co.,* 208 A.D.2d 111, 622 N.Y.S.2d 678 (1st Dep't 1995)), the Second Circuit has adhered to the view that the New York Court of Appeals does not consider such a dismissal to be a favorable termination in any circumstances. *Singer,* 63 F.3d at 118 n. 7.

Here, it is undisputed that both of Steiner's prosecutions were dismissed in the interest of justice. Therefore, there is no question that the second element of the malicious prosecution claim cannot be proved; as a matter of law, the prosecutions did not terminate in favor of Steiner.[6] For this reason, defendants are entitled to summary judgment on the malicious prosecution claims.

### D. *The Statute Of Limitations*

Defendants argue that the false arrest and malicious prosecution claims are barred by § 1983's three-year statute of limitations. At issue is whether plaintiff is entitled to the benefit of Federal Rule of Civil Procedure 15(c), which provides for the relation back of amended pleadings, and whether defendants waived the statute of limitations defense by failing to raise it either in the answer to the first amended complaint or at status conferences with a magistrate judge.

---

**6.** In any event, Steiner has made no showing that the dismissals were indicative of innocence. Rather, they reflected the determination that Schiavone was not a credible witness. This is not an indication that Steiner was innocent. *Cf. Russell v. Smith,* 68 F.3d 33, 37 (2d Cir.1995) (termination not indicative of innocence where a complaining witness had recanted his testimony).

All § 1983 claims are characterized as claims for personal injuries for statute of limitations purposes. *Wilson v. Garcia,* 471 U.S. 261, 105 S.Ct. 1938, 85 L.Ed.2d 254 (1985). Where state law provides multiple statutes of limitations for personal injury actions, courts considering a § 1983 claim should borrow the state's general statute for personal injury actions. *Owens v. Okure,* 488 U.S. 235, 109 S.Ct. 573, 102 L.Ed.2d 594 (1989). In New York, this limitations period is three years. *Id.* at 249, 109 S.Ct. at 582; *see also 423 South Salina Street, Inc. v. Syracuse,* 68 N.Y.2d 474, 510 N.Y.S.2d 507, 503 N.E.2d 63 (1986), *cert. denied,* 481 U.S. 1008, 107 S.Ct. 1880, 95 L.Ed.2d 488 (1987).

Under Federal Rule of Civil Procedure 15(c), when a complaint is amended to add a party defendant, the amendment relates back to the date when the original complaint was filed. This rule was amended effective December 1, 1991—after Steiner's complaint was filed, but before the amended complaint was filed. The amended version of the rule applies to cases pending in the district courts on December 1, 1991, "insofar as just and practicable." *Barrow v. Wethersfield Police Dept.,* 66 F.3d 466 (2d Cir.1995) (citing Supreme Court Order of April 30, 1991, Adopting Amendments to Federal Rules of Civil Procedure).

Originally, in order to gain the benefit of Rule 15(c), a party was required to show that: (1) the amended complaint arose out of conduct set out in the original pleading; (2) the party to be brought in received such notice that it would not have been prejudiced in maintaining its defense; (3) the party should have known that, but for a mistake of identity, the original action would have been brought against it; and (4) the second and third criteria were fulfilled within the limitations period. *Id.* (citing *Schiavone v. Fortune,* 477 U.S. 21, 29, 106 S.Ct. 2379, 2383, 91 L.Ed.2d 18 (1986)). Under the revised version, the first three requirements are the same but now the second and third requirements must be fulfilled within 120 days of filing the original complaint. *Barrow,* 66 F.3d at 468 (citing Commentary to Rule 15).

The amendments to Rule 15(c) are largely irrelevant to this motion because the parties in the amended complaint were on notice, if they had notice at all, within 120 days of the filing of the original complaint. Therefore, whether plaintiff is entitled to the benefit of relation-back under Rule 15(c) turns on whether the new parties "knew or should have known that, but for a mistake concerning the identity of the proper party, the action would have been brought against the party."

In plaintiff's original complaint filed May 10, 1990—the only one filed within the statutory period—the only individual parties sued were "Various (as of yet unidentified) Police Officers." The Second Circuit recently held that Rule 15(c) does not allow an amended complaint adding new defendants to relate back if the newly-added defendants were not named originally because the plaintiff did not know their identities. *Barrow,* 66 F.3d at 470 (2d Cir.1995). The lack of knowledge of a party's identity cannot be characterized as a mistake; Rule 15(c) was meant to allow an amendment *changing the name of a party* to relate back only if the change is the result of an error, such as a misnomer or misidentification. *Id.* Here, the individual police officers were not misidentified or misnamed in the original complaint. They were not named because plaintiff had not yet identified them.[7] Therefore, Rule 15(c) does not apply and the amended complaint does not relate back to the date the original complaint was filed. Because the first and second amended complaints were not filed within three years, they were not filed within the statutory period. For this reason, these claims are barred unless, as plaintiff argues,

---

7. Plaintiff argues that he was hindered in obtaining the names of the officers because defendants failed to comply in a timely fashion with a boilerplate discovery order issued by the magistrate judge. (Plaintiff's Reply Memorandum of Law in Support of Plaintiff's Motion for Summary Judgment, Exhibit B.) This argument is unfounded for two reasons. First, it is not clear that compliance with this order would have provided the names of the individual officers plaintiff eventually sued. Second, the 62nd precinct responded in full on August 14, 1992, to a recent request by Steiner for the names and shield numbers of all of the officers present at his residence on February 9 and March 21, 1989. Thus, the information was readily available to Steiner.

defendants waived the statute of limitations defense.

 However, plaintiff's waiver argument fails. Under Federal Rule of Civil Procedure 8(c), the statute of limitations is an affirmative defense that must be asserted in a party's responsive pleadings, at the earliest possible moment, and is a personal defense that is waived if not promptly pleaded. *Davis v. Bryan*, 810 F.2d 42 (2d Cir.1987). The defense need not be raised in a pre-answer motion; it is preserved by its bare assertion in a responsive pleading. *Santos v. District Council of New York City, etc.*, 619 F.2d 963, 967 (2d Cir.1980).

Here, the individual defendants did not waive the statute of limitations defense when the answer to the first amended complaint was filed because they did not respond to the first amended complaint. They were never served with it. Once all of the individual defendants served with the second amended complaint, they filed their answer, and asserted the statute of limitations defense. Thus, their defense was adequately asserted when they responded to the second amended complaint.

The defendants' failure to raise the defense at a status conference before the magistrate judge, when plaintiff indicated he would amend his complaint, does not constitute waiver of the defense. As noted above, pre-answer motions are not required to preserve the defense. Therefore, the false arrest and malicious prosecution claims are barred by the three-year statute of limitations and must be dismissed for this reason as well.

### E. *The State Claims*

 Because the federal claims against the individual defendants must fail, I will not retain jurisdiction over the supplemental claims. Defendants make the further argument that the state claims should be dismissed against all parties because plaintiff failed to filed a timely notice of claim. Section 50–e of the New York General Municipal Law provides that serving a notice of claim within ninety days after the claim arises against a municipality or municipal officer or employee is a prerequisite to commencing an action based on state law. *Rattner v. Netburn*, 733 F.Supp. 162, 166 (S.D.N.Y.1989) (citing N.Y.Gen.Mun.Law § 50–e (1986)). Failure to comply with this provision requires dismissal. *Id.* (citing *Davidson v. Bronx Mun. Hosp.*, 64 N.Y.2d 59, 62, 484 N.Y.S.2d 533, 473 N.E.2d 761 (1984)). New York General Municipal Law § 50–e applies to supplemental state claims in § 1983 actions. *See, e.g., Shakur v. McGrath*, 517 F.2d 983, 984 (2d Cir.1975).

Here, plaintiff alleges that he filed a notice of claim "on or about September 22, 1991," for actions that are alleged to have accrued on February 9, 1989, March 21, 1989, and May 10, 1990. Steiner does not contest defendants' argument that the notice of claim was filed more than ninety days after the claims arose. For this reason, the supplemental state tort claims should be dismissed.

### CONCLUSION

For the reasons stated above, the individual defendants are entitled to summary judgment. The Clerk of the Court is advised that this Order closes the case against those defendants.

So Ordered.