Christopher TYLER, Plaintiff,

v.

STATE OF NEW YORK, et al, Defendants.

No. 93–CV–6320L.

United States District Court, W.D. New York.

Jan. 29, 1997.

John A. Schuppenhauer, Canandaigua, NY, for Christopher Tyler.

Samuel M. Hall, Hall & Karz, Canandaigua, NY, for the City of Geneva, the Geneva City Police, Jane Doe, City Police, John Doe, City Police Officer.

Carlos Rodriguez, Office of New York State Attorney General, Rochester, NY, Mary H. Doyle, New York State Attorney, General's Office, Department of Law, Rochester, NY, for Kevin M. Woody.

## DECISION AND ORDER

LARIMER, Chief Judge.

This action is brought pursuant to 42 U.S.C. § 1983. Plaintiff, Christopher Tyler ("plaintiff"), claims that the above-captioned defendants violated his constitutional rights when he was arrested and prosecuted for criminal sale of a controlled substance.

Pending before me are: (1) plaintiff's motion for leave to take the deposition of an inmate; (2) plaintiff's motion for leave to amend the complaint to add three additional defendants; and (3) defendants' motion for summary judgment.

## FACTUAL BACKGROUND

In July 1990, Archie Taylor ("Taylor") contacted Geneva City Police Officer Edward McGuigan ("McGuigan") and told him that Louinet Fontilus ("Fontilus") was dealing crack cocaine out of his apartment. Taylor indicated that he would be willing to introduce an undercover officer to Fontilus for the purpose of effecting a controlled buy.

McGuigan had worked with Taylor several times over the past year, and each time Taylor had supplied reliable information, which led to arrests and convictions for drug trafficking. McGuigan, therefore, contacted the New York State Police to enlist the assistance of several Troopers, including Kevin M. Woody ("Woody"), Joaquin Aymerich ("Aymerich"), and Luis Rodriguez ("Rodriguez").

On July 12, 1990, Taylor and Woody attempted to locate Fontilus, while McGuigan, Aymerich, and Rodriguez acted as surveillance and backup. When they finally found Fontilus, Taylor and Woody told him that they wanted to purchase sixty dollars worth of crack cocaine. Fontilus agreed and then walked away; another individual appeared and handed them the crack cocaine.

After the buy, Taylor and Woody met with the other officers. Taylor told the officers that the person who handed them the drugs was "Giz." McGuigan responded that "Giz" was Christopher Tyler—an individual the Geneva Police had arrested in the past and was known to be involved with drugs.[1] In a tape-recorded conversation with plaintiff's criminal attorney, Taylor claims that he then told the officers that they better show him some mug shots because he did not know anyone by the name of Christopher Tyler. *Interview of Archie Taylor by Bruce A. Rosekrans, Esq. on 9/27/91*, at 12–13 & 17. No

---

1. There is a conflict in the testimony before the Court as to whether Taylor or McGuigan actually stated that "Giz" was Christopher Tyler. Several witnesses testified that Taylor stated only that "Giz" handed them the drugs, and then McGuigan replied that "Giz" was Christopher Tyler. Officer McGuigan testified, however, that Taylor stated both that "Giz" gave them the drugs and that "Giz" was Christopher Tyler. Apparently, there is no dispute that "Giz" is Christopher Tyler's nickname.

Viewing the facts, as I must, in the light most favorable to the nonmoving party, I will assume for the purposes of the pending motions that Taylor stated that "Giz" handed them the drugs, and then McGuigan replied that "Giz" was Christopher Tyler.

photographs were ever shown to Taylor. It is interesting to note that none of the officers testified at their depositions, or were even asked by plaintiff's counsel, about Taylor's request to see photographs. Nevertheless, none of the officers have come forward, by affidavit or otherwise, to dispute Taylor's claim that he requested to see photographs of plaintiff, the alleged drug distributor.

Thereafter, McGuigan provided Rodriguez with plaintiff's birth date. Rodriguez ran a criminal history on plaintiff, the results of which revealed that plaintiff had been arrested by the Geneva Police Department before and that his nickname was, in fact, "Giz." Rodriguez prepared the felony complaint, charging Fontilus and plaintiff with criminal sale of a controlled substance. Woody read and signed the complaint, indicating that the person who sold him the drugs was plaintiff. A Geneva City Court Judge then issued a warrant for plaintiff's arrest.

On July 29, 1990, Geneva City Police Officer Peter Libertore ("Libertore") arrested plaintiff. Plaintiff was arraigned and remanded to the Ontario County Jail, where he remained until August 9, 1990. On that date, all charges were dismissed, and plaintiff was released from custody, when Woody was unable to testify at a preliminary hearing due to the death of his father.

Subsequently, the Ontario County District Attorney's Office presented plaintiff's case to the grand jury. At the hearing, Woody testified that plaintiff sold him the drugs. Ultimately, the grand jury handed down an indictment. Libertore arrested plaintiff on October 3, 1990, and plaintiff was held in custody until November 5, 1990, at which time he was released on bail.

On April 9, 1991, Woody appeared at the courthouse for plaintiff's trial. At that time, Taylor approached Woody and told him that plaintiff was the "wrong guy." Taylor claimed that he had been trying to contact the Geneva Police Department and the District Attorney's Office. Further, Taylor maintained that he had told McGuigan over the phone that plaintiff was not the man who handed the drugs to the undercover officer. *Interview of Archie Taylor by Bruce A. Rosekrans, Esq. on 9/27/91*, at 23–24. According to Taylor, McGuigan did not believe him and simply dismissed him as trying to cover up for or protect the plaintiff. *Id.* McGuigan, however, denies ever receiving a phone call. Once Woody saw plaintiff, he realized that plaintiff was not, in fact, the individual who handed him the drugs. All charges against plaintiff were dismissed.

Plaintiff commenced this action, alleging false arrest and malicious prosecution. Plaintiff moves for leave: (1) to take the deposition of Taylor, an inmate currently incarcerated at Mohawk Correction Facility in Rome, New York; and (2) to amend the complaint to add McGuigan, Aymerich, and Rodriguez as defendants.

State Trooper Kevin M. Woody, State Trooper Jane Doe, State Trooper John Doe, City of Geneva, Geneva City Police, City Police Officer Jane Doe, and City Police Officer John Doe move for summary judgment on the grounds that: (1) probable cause existed for the officers' action; (2) even if probable cause was lacking, the officers are entitled to qualified immunity; and (3) the claims against the City of Geneva and Geneva City Police must be dismissed because there are neither allegations nor proof that these defendants acted to deprive plaintiff of a constitutional right pursuant to a governmental custom or policy.[2]

## DISCUSSION

### A. Plaintiff's Motion for Leave to Take the Deposition of Archie Taylor

Plaintiff moves, pursuant to Fed.R.Civ.P. 30(a)(2), for leave to take the deposition of Taylor, an inmate currently incarcerated at Mohawk Correction Facility in Rome, New York.

The original deadline for completion of discovery in this case was April 15, 1996. This deadline, however, was extended several times by agreement of the parties. In fact,

---

2. The State of New York and the New York State Police have not moved for summary judgment. Apparently, the parties currently are working on a stipulation that would dismiss plaintiff's claims as to these two defendants.

file correspondence indicates that there were still some outstanding discovery issues as of July 1996. Plaintiff filed his motion for leave to take the deposition of Taylor on August 2, 1996. Defendants object to this request primarily on the basis that it comes long after the Court ordered time for discovery has past.

I find that, in the interest of justice, the deposition of Taylor should go forward. It appears from the record before the Court that Taylor possesses knowledge that is relevant to the subject matter involved in the pending action, Fed.R.Civ.P. 26(b)(1), and that there is no basis to deny or limit this discovery request under Fed.R.Civ.P. 26(b)(2). Therefore, plaintiff's motion for leave to depose Taylor is granted.

## B. Plaintiff's Motion for Leave to Amend the Complaint to Add Defendants

Plaintiff seeks leave to amend the complaint, pursuant to Fed.R.Civ.P. 15, to add McGuigan, Aymerich, and Rodriguez as defendants in place of the currently named "John Doe" defendants. Plaintiff readily admits that he listed "John Doe" initially due to his lack of information regarding the officers' identities. See Schuppenhauer Aff. of 10/8/96, at 4, ¶ 12. Essentially, plaintiff's claim is that now that the officers' identities are known, they should simply be substituted for the "John Doe" defendants. However, what plaintiff fails to realize, and what all defendants neglected to bring to his attention, is that to allow such an amendment would be in direct contravention of clear Second Circuit precedent.

The three year statute of limitations applicable to plaintiff's § 1983 claim has long since expired. See Murphy v. Lynn, 53 F.3d 547, 548 (2d Cir.1995). Therefore, plaintiff may amend his complaint now to add McGuigan, Aymerich, and Rodriguez as defendants only if the amendment would "relate back" to the date his original complaint was filed. Soto v. Brooklyn Correctional Facility, 80 F.3d 34, 35 (2d Cir.1996).

An amendment to a pleading that attempts to add a new party "relates back" to the date of the original complaint if: (1) the claim arises out of conduct set forth in the original pleading; (2) the party to be added received notice such that it will not be prejudiced in maintaining a defense; (3) the party to be added should have known that, but for a mistake of identity, the original action would have been brought against it; and (4) the second and third requirements are fulfilled within the period prescribed in Rule 4(m) for service of process. See Fed.R.Civ.P. 15(c)(3); Barrow v. Wethersfield Police Dep't, 66 F.3d 466, 468–69 (2d Cir.1995).

It is the third requirement that proves fatal to plaintiff's motion. The Second Circuit recently has held that "Rule 15(c) explicitly allows the relation back of an amendment due to a 'mistake' concerning the identity of the parties (under certain circumstances), but the lack of knowledge of a party's identity cannot be characterized as a mistake." Barrow, 66 F.3d at 470. Therefore, "Rule 15(c) does not allow an amended complaint adding new defendants to relate back if the newly-added defendants were not named originally because the plaintiff did not know their identities." Id.; accord Steiner v. City of New York, 920 F.Supp. 333, 341–42 (E.D.N.Y.1996).

Here, plaintiff failed to specify these three officers' names in his original complaint or to add them within the applicable statute of limitations, despite the relative ease with which their identities could have been discovered. Instead, plaintiff simply listed "State Trooper John Doe" and "City Police Officer John Doe" as defendants. Plaintiff's actions in this regard resulted not from a "mistake of identity," but from a clear lack of knowledge. Accordingly, the requirements of Rule 15(c) for relation back are not met, and plaintiff's motion for leave to amend the complaint is denied.

## C. Defendants' Motion for Summary Judgment

### 1. Summary Judgment Standard

A court may grant summary judgment "only if the evidence, viewed in the light most favorable to the party opposing the motion, presents no genuine issue of material fact," Terminate Control Corp. v. Horowitz, 28 F.3d 1335, 1352 (2d Cir.1994) (quoting Cable

*Science Corp. v. Rochdale Village, Inc.,* 920 F.2d 147, 151 (2d Cir.1990)), and the movant is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); *Chambers v. TRM Copy Ctrs. Corp.,* 43 F.3d 29, 36 (2d Cir.1994).

In order to avoid the granting of summary judgment, the nonmovant must come forward with specific facts showing that there is a genuine issue for trial. Fed.R.Civ.P. 56(e); *Western World Ins. Co. v. Stack Oil, Inc.,* 922 F.2d 118, 121 (2d Cir.1990). A genuine issue of material fact exists if "a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). If there is evidence in the record as to any material fact from which an inference could be drawn in favor of the nonmovant, summary judgment is unavailable. *Rattner v. Netburn,* 930 F.2d 204, 209 (2d Cir.1991).

However, mere conclusory allegations, speculation or conjecture will not be sufficient to defeat summary judgment. *Western World,* 922 F.2d at 121. Although the non-moving party need not produce evidence in a form that would be admissible at trial in order to avoid summary judgment, the non-movant must set forth specific facts showing that there is, indeed, a genuine issue for trial. *Celotex Corp. v. Catrett,* 477 U.S. 317, 324, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986).

Finally, when determining a motion for summary judgment, the Court is charged with the duty of "issue finding" not "issue resolution." *Gallo v. Prudential Residential Servs., Ltd. Partnership,* 22 F.3d 1219, 1224 (2d Cir.1994).

Defendants State Trooper Kevin M. Woody, State Trooper Jane Doe, State Trooper John Doe, City Police Officer Jane Doe, and City Police Officer John Doe move for summary judgment on the grounds that: (1) probable cause existed for the officers' action; and (2) even if probable cause was lacking, the officers are entitled to qualified immunity. Because I already have held that officers McGuigan, Aymerich, and Rodriguez can not be substituted for the "John Doe" defendants, and because it would not be possible for plaintiff to try this case against "Doe" defendants, the claims against these individuals must be dismissed. Therefore, the only remaining defendant to consider on the instant motion for summary judgment is State Trooper Kevin M. Woody.

## 2. Probable Cause and Qualified Immunity

The question of probable cause remains distinct from the question of qualified immunity. *Warren v. Dwyer,* 906 F.2d 70, 75 (2d Cir.), *cert. denied,* 498 U.S. 967, 111 S.Ct. 431, 112 L.Ed.2d 414 (1990). If probable cause to arrest existed, then the arrest was lawful, and a claim for false arrest fails. *Zanghi v. Incorporated Village of Old Brookville,* 752 F.2d 42, 45 (2d Cir.1985). Generally, a claim for malicious prosecution also fails if probable cause existed for the arrest, unless, of course, evidence later surfaces which eliminates probable cause to prosecute. *Lowth v. Town of Cheektowaga,* 82 F.3d 563, 571 (2d Cir.1996) ("In order for probable cause to dissipate, the groundless nature of the charges must be made apparent by the discovery of some intervening fact.... '[T]he failure to make a further inquiry when a reasonable person would have done so may be evidence of lack of probable cause.'") (quoting *Colon v. City of New York,* 60 N.Y.2d 78, 82, 468 N.Y.S.2d 453, 455 N.E.2d 1248 (1983)). If probable cause for the arrest or prosecution is lacking, then the inquiry becomes one of qualified immunity.

Probable cause to arrest exists when an officer has knowledge or reasonably trustworthy information sufficient to warrant a person of reasonable caution in the belief that an offense has been committed or is about to be committed by the person to be arrested. *See Dunaway v. New York,* 442 U.S. 200, 208 n. 9, 99 S.Ct. 2248, 2254 n. 9, 60 L.Ed.2d 824 (1979).

The doctrine of qualified immunity shields government employees, acting in their official capacity, "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982). Further, even if the plaintiff's rights

were clearly established, "the qualified immunity defense protects a government actor if it was 'objectively reasonable' for him to believe that his actions were lawful at the time of the challenged act."[3] *Lennon v. Miller,* 66 F.3d 416, 420 (2d Cir.1995); *Calamia v. City of New York,* 879 F.2d 1025, 1035 (2d Cir.1989). "The objective reasonableness test is met—and the defendant is entitled to qualified immunity—if 'officers of reasonable competence could disagree' on the legality of the defendant's actions." *Lennon,* 66 F.3d at 420 (quoting *Malley v. Briggs,* 475 U.S. 335, 341, 106 S.Ct. 1092, 1096, 89 L.Ed.2d 271 (1986)).

■ Second Circuit cases indicate that when the facts are undisputed, the court should decide the issues of probable cause and qualified immunity as a matter of law. *Lennon,* 66 F.3d at 421; *Castro v. United States,* 34 F.3d 106, 112 (2d Cir.1994); *Moore v. Comesanas,* 32 F.3d 670, 673 (2d Cir.1994); *Warren,* 906 F.2d at 76. I find, however, that there is a disputed issue of fact that precludes a legal determination of whether Woody had probable cause to pursue an arrest and prosecution of plaintiff or, if he did not, whether he is entitled to qualified immunity.[4]

Taylor claims that he told the officers "Giz" handed them the drugs, and McGuigan replied that "Giz" was Christopher Tyler. Taylor alleges that at that point, he told the officers that they better show him some mug shots because he did not know anyone by the name of Christopher Tyler. *Interview of Archie Taylor by Bruce A. Rosekrans, Esq. on 9/27/91,* at 12–13 & 17. No photographs

were shown to Taylor. A question of fact, therefore, remains for the jury as to whether Woody had probable cause to pursue an arrest and prosecution of plaintiff, given the doubt expressed by Taylor about plaintiff's identity, *or* whether officers of reasonable competence could at least disagree over whether probable cause existed to arrest and prosecute the plaintiff.[5]

Accordingly, defendants' motion for summary judgment is denied as to State Trooper Kevin M. Woody.

### 3. Municipal Liability

■ Defendants also move for summary judgment on the claims against the City of Geneva and Geneva City Police. Defendants argue that these claims must be dismissed because there are neither allegations nor proof that the alleged constitutional deprivation was done pursuant to a governmental custom or policy.

I agree with the defendants. In order to state a § 1983 claim against a municipal defendant, plaintiff must allege that the constitutional deprivation occurred pursuant to a governmental custom, policy, ordinance, regulation, or decision, whether made by its lawmakers or by those officials whose edicts or acts may fairly be said to represent official policy. *Monell v. Department of Social Servs.,* 436 U.S. 658, 691–94, 98 S.Ct. 2018, 2036–38, 56 L.Ed.2d 611 (1978). A municipal entity simply cannot be held liable under § 1983 on a theory of respondeat superior. *Pembaur v. City of Cincinnati,* 475 U.S. 469, 478, 106 S.Ct. 1292, 1297–98, 89 L.Ed.2d 452 (1986).

---

3. Here, there is no dispute that freedom from false arrest and malicious prosecution are clearly established rights. Therefore, the question of qualified immunity in this case turns on whether the actions of Woody were objectively reasonable under the circumstances.

4. At the outset, I note that this issue of fact is evidenced in a transcript of a tape-recorded interview of Taylor by plaintiff's criminal attorney. While this transcript is not in a form that would be admissible at trial, I have considered it for the purposes of defeating this motion for summary judgment, particularly, because discovery concerning Taylor has not been completed and his deposition will be taken in the near future.

However, if after Taylor has been deposed and discovery has been completed in its entirety, it

appears to the defendant that plaintiff will be unable to produce any admissible evidence at trial on the issues of probable cause and qualified immunity, defendant may, at that time, renew his motion for summary judgment.

5. Theoretically, an additional issue of facts exists as to whether McGuigan had probable cause to continue the prosecution against plaintiff, given Taylor's alleged phone call, *or* whether officers of reasonable competence could at least disagree over whether probable cause existed to continue the prosecution against plaintiff. However, because McGuigan is not before the Court and plaintiff is unable to get him before the Court, this factual issue need not be considered.

Here, plaintiff has neither alleged nor established that defendants conduct was done pursuant to a governmental policy or custom. Accordingly, defendants' motion for summary judgment against the City of Geneva and Geneva City Police is granted.[6]

## CONCLUSION

For the foregoing reasons, plaintiff's motion for leave to depose Archie Taylor is granted. Plaintiff's motion for leave to amend the complaint to add defendants is denied. Defendants' motion for summary judgment is granted as to the City of Geneva, The Geneva City Police, State Trooper Jane Doe, State Trooper John Doe, City Police Officer Jane Doe, and City Police Officer John Doe. Defendants' motion for summary judgment is denied as to State Trooper Kevin M. Woody.

IT IS SO ORDERED.

---

**6.** Although the State of New York and the New York State Police have not moved for summary judgment, I note that if they had, this same rationale would have applied to them and served to dismiss plaintiff's claims against them.