Adeline LENNON, Plaintiff–Appellee,

v.

Chief William P. MILLER, The
City of Troy, Defendants,

Patrolman Donald J. Backaus, and
Patrolman Peter Gordon,
Defendants–Appellants.

No. 1660, Docket 94–9189.

United States Court of Appeals,
Second Circuit.

Argued July 17, 1995.

Decided Sept. 12, 1995.

Matthew J. Kelly, Albany, New York (Roemer & Featherstonhaugh, P.C., on the brief), for Plaintiff–Appellee.

Donald J. Shanley, Deputy Corporation Counsel of City of Troy, Troy, New York (Peter R. Kehoe, Corporation Counsel of City of Troy, on the brief), for Defendants–Appellants.

Before: WINTER, CALABRESI, and CABRANES, Circuit Judges.

JOSÉ A. CABRANES, Circuit Judge:

We review a judgment of the United States District Court for the Northern District of New York (Frederick J. Scullin, Jr., *Judge*), denying appellants' motion for summary judgment on grounds of qualified immunity. The question presented is whether the appellants are entitled to summary judgment on qualified immunity grounds under the "objective reasonableness" standard stated in *Anderson v. Creighton*, 483 U.S. 635, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987). In *Anderson*, the Supreme Court held that a government actor enjoys qualified immunity if, at the time of the challenged action, it was objectively reasonable for him to believe that his behavior did not violate the appellee's clearly established constitutional rights. *Id.* at 639, 641, 107 S.Ct. at 3038, 3039. We reverse.

## I. FACTS

There is no dispute about the material facts. On and prior to October 11, 1991, Adeline Lennon, the plaintiff, and her husband, James Lennon, were living separately

due to marital problems. Mrs. Lennon, a nurse at a local doctor's office, had previously called the Central Police Station in Troy, N.Y. to report threats from Mr. Lennon, and on October 11, 1991, she requested and received a police escort by Officer Donald Backaus to the doctor's office where she worked. Later that morning, James Lennon arrived at Mrs. Lennon's office to take an automobile, a 1988 Cadillac Coupe de Ville, from her. The plaintiff called the police and requested assistance. Officers Backaus and Peter Gordon were dispatched to the scene. Backaus, who had escorted Mrs. Lennon into the building earlier, arrived first, followed shortly thereafter by Gordon.

Officer Backaus met Mr. Lennon in the garage behind the plaintiff's office. Mr. Lennon identified himself and stated his intention to take the car. He asserted that he owned the vehicle and showed Backaus the certificate of title and the registration issued by the New York State Department of Motor Vehicles ("DMV"). Backaus confirmed Mr. Lennon's ownership of the car with the DMV. Mr. Lennon informed the officers that he could not unlock or start the car because the locks and ignition had been changed. The officers told Mr. Lennon that he would have to make arrangements to have the car towed if he wished to take it.

Backaus told the plaintiff that her husband had the right to take the car. She went inside the building and returned to ask Backaus to speak with her attorney on the telephone about her rights to the car under New York State Domestic Relations Law. Backaus declined to speak with the plaintiff's attorney, and suggested that the attorney call him at the police station later. Mrs. Lennon then unlocked the car, entered the vehicle, locked the doors, and attempted to start the engine.

When Backaus asked the plaintiff to get out of the car, she refused to do so. Backaus then asked Mr. Lennon for permission to break the car's window to prevent the plaintiff from driving the car out of the garage. When Mrs. Lennon heard this, she stopped trying to start the engine and unlocked the car door. However, she remained in the driver's seat and did not emerge from the

car. Backaus opened the door and informed the plaintiff that she was under arrest for obstructing governmental administration. He pulled her hand off the ignition, placed his arm around her neck, shoulder, right arm, and right hand, and forcibly removed her from the car. Mrs. Lennon was handcuffed and transported to the Central Police Station. There, she was charged with obstructing governmental administration under New York Penal Law § 195.05, given an appearance ticket, and released. After her release, Mrs. Lennon was treated at a hospital for an injury to her right wrist. The record does not indicate anything further about Mrs. Lennon's diagnosis or the extent of her injuries.

On November 1, 1991, Mrs. Lennon's defense counsel moved to dismiss the charge against her. On December 17, 1991, Judge Patrick McGrath of the Troy City Criminal Court entered an order dismissing the charge against Mrs. Lennon. Judge McGrath found that the officers had no authority to order her out of the car, and thus, they could not charge her with obstructing governmental administration for failure to comply with that order:

> If the officer believed that the defendant's possession of the vehicle was wrongful he should have arrested the defendant for Unauthorized Use of a Vehicle or Larceny of the Vehicle.... Since the officer did not arrest the defendant for any crime in connection with her possession of the vehicle, the officer had no authority to remove the defendant from the vehicle and the charge of Obstructing Governmental Administration cannot stand.

Judge McGrath concluded, in other words, that had the officers arrested Mrs. Lennon for some other offense, such as larceny of the vehicle, then it would have been appropriate to arrest her for obstructing governmental administration under New York Penal Law § 195.05 when she ignored their orders to get out of the car. However, because the officers had not arrested Mrs. Lennon for any other offense, the judge held that they were not performing an "official government function" within the meaning of § 195.05 when they ordered her to exit the vehicle.

*See* New York Penal Law § 195.05 (McKinney's 1988). Thus, according to Judge McGrath, Mrs. Lennon was not obstructing governmental administration when she ignored those orders.

On April 10, 1992, the plaintiff brought the present action, which included claims against Backaus and Gordon under 42 U.S.C. § 1983 for false arrest, malicious prosecution and excessive force; an additional § 1983 claim against the City of Troy and Police Chief William P. Miller for failure to train Backaus and Gordon properly; supplemental state claims against Backaus and Gordon for unlawful imprisonment and malicious prosecution; and a supplemental state claim of assault against Backaus. The district court dismissed the plaintiff's § 1983 claim against Chief Miller and the City of Troy. The court dismissed the state claims against Gordon on statute of limitations grounds.[1] The court denied motions for summary judgment filed by Backaus and Gordon on the § 1983 claims, and on the supplemental state law claims pertaining to Backaus. The officers appeal the order denying their motions for summary judgment.

## II. DISCUSSION

### A. Jurisdiction

We first address our jurisdiction over this appeal. In order to decide the jurisdictional question, we must examine both the summary judgment standard in qualified immunity cases and recent Supreme Court precedent on the appealability of denials of summary judgment on grounds of qualified immunity.

### 1. The Summary Judgment Standard in Qualified Immunity Cases

 Qualified immunity shields government officials from liability for civil damages as a result of their performance of discretionary functions, and serves to protect government officials from the burdens of costly, but insubstantial, lawsuits. *Harlow v. Fitzgerald,* 457 U.S. 800, 817–18, 102 S.Ct. 2727,

2737–38, 73 L.Ed.2d 396 (1982). Government actors performing discretionary functions are "shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Id.* at 818, 102 S.Ct. at 2738. Even where the plaintiff's federal rights and the scope of the official's permissible conduct are clearly established, the qualified immunity defense protects a government actor if it was "objectively reasonable" for him to believe that his actions were lawful at the time of the challenged act. *Anderson,* 483 U.S. at 641, 107 S.Ct. at 3039; *Robison v. Via,* 821 F.2d 913, 921 (2d Cir.1987) (citing *Malley v. Briggs,* 475 U.S. 335, 340–41, 106 S.Ct. 1092, 1095–96, 89 L.Ed.2d 271 (1986)). The objective reasonableness test is met—and the defendant is entitled to immunity—if "officers of reasonable competence could disagree" on the legality of the defendant's actions. *Malley,* 475 U.S. at 341, 106 S.Ct. at 1096; *accord Golino v. City of New Haven,* 950 F.2d 864, 870 (2d Cir.1991), *cert. denied,* —— U.S. ——, 112 S.Ct. 3032, 120 L.Ed.2d 902 (1992).

 Although this inquiry requires a focus on the particular facts of the case, in *Robison* we held that a defendant is entitled to summary judgment on qualified immunity grounds when

> "no reasonable jury, looking at the evidence in the light most favorable to, and drawing all inferences most favorable to, the plaintiffs, could conclude that it was objectively unreasonable for the defendant[ ]" to believe that he was acting in a fashion that did not clearly violate an established federally protected right.

821 F.2d at 921 (quoting *Halperin v. Kissinger,* 807 F.2d 180, 189 (D.C.Cir.1986)); *see also Wachtler v. County of Herkimer,* 35 F.3d 77, 80 (2d Cir.1994) (same). In other words, if any reasonable trier of fact could find that the defendants' actions were objectively unreasonable, then the defendants are not entitled to summary judgment. An officer's actions are objectively unreasonable when no officer of reasonable competence

---

1. The plaintiff's state claims against Gordon were dismissed on statute of limitations grounds because she did not add him as a defendant until November 12, 1992—more than a year after the date she was released from custody.

could have made the same choice in similar circumstances. *See Malley*, 475 U.S. at 341, 106 S.Ct. at 1096. Thus, if the court determines that the only conclusion a rational jury could reach is that reasonable officers would disagree about the legality of the defendants' conduct under the circumstances, summary judgment for the officers is appropriate.

We recognize the apparent anomaly of holding that summary judgment is appropriate when a trier of fact would find that reasonable officers could disagree. After all, Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment shall be entered only when a review of the entire record demonstrates that there is no genuine issue as to any material fact. Disputes over reasonableness are usually fact questions for juries. However, in qualified immunity cases, we are not concerned with the correctness of the defendants' conduct, but rather the "objective reasonableness" of their chosen course of action given the circumstances confronting them at the scene. With this concern in mind, we have held that when

> the factual record is not in serious dispute…[,] [t]he ultimate legal determination whether … a reasonable police officer should have known he acted unlawfully is a question of law better left for the court to decide.

*Warren v. Dwyer*, 906 F.2d 70, 76 (2d Cir.), *cert. denied*, 498 U.S. 967, 111 S.Ct. 431, 112 L.Ed.2d 414 (1990); *see also Oliveira v. Mayer*, 23 F.3d 642, 649 (2d Cir.1994), *cert. denied*, —— U.S. ——, 115 S.Ct. 721, 130 L.Ed.2d 627 (1995) ("[I]mmunity ordinarily should be decided by the court … in those cases where the facts concerning the availability of the defense are undisputed.") (citations and internal quotation marks omitted); *Finnegan v. Fountain*, 915 F.2d 817, 821 (2d Cir.1990) ("Once disputed factual issues are resolved, the application of qualified immunity is … ultimately a question of law for the court to decide.").

▮ The rule requiring the judge to resolve questions of reasonableness on summary judgment in qualified immunity cases where the material facts are not in dispute is consistent with the doctrine's purpose of providing immunity from suit, as well as a defense to liability. *See Mitchell v. Forsyth*, 472 U.S. 511, 526–27, 105 S.Ct. 2806, 2815–16, 86 L.Ed.2d 411 (1985). The Supreme Court has held that the objective reasonableness standard was specifically designed to "permit the resolution of many insubstantial claims on summary judgment." *Harlow*, 457 U.S. at 818, 102 S.Ct. at 2738; *see also Warren*, 906 F.2d at 74. If there is no dispute about the material facts, the district court should assess the reasonableness of the defendants' conduct under the circumstances presented in order to determine on summary judgment whether the defendants are entitled to qualified immunity.

2. Appellate Jurisdiction Over Denials of Summary Judgment: *Johnson v. Jones*

This distinction between questions of fact and questions of law is relevant to the question of whether we have appellate jurisdiction over the district court's denial of the defendants' motion for summary judgment. Although under 28 U.S.C. § 1291 (1988) appellate courts have jurisdiction to hear appeals only from "final decisions" of district courts, non-final orders are appealable under certain circumstances. In *Cohen v. Beneficial Indus. Loan Corp.*, 337 U.S. 541, 69 S.Ct. 1221, 93 L.Ed. 1528 (1949), the Supreme Court recognized the collateral order doctrine, which allows appeals under § 1291 from otherwise unappealable district court orders which

> finally determine claims of right separable from, and collateral to, rights asserted in the action, too important to be denied review and too independent of the cause itself to require that appellate consideration be deferred until the whole case is adjudicated.

*Id.* at 546, 69 S.Ct. at 1226. In *Mitchell v. Forsyth*, the Supreme Court held that courts of appeals have jurisdiction to review district court orders denying summary judgment on a qualified immunity defense under the collateral order doctrine. 472 U.S. at 530, 105 S.Ct. at 2817; *see also Cartier v. Lussier*, 955 F.2d 841, 844 (2d Cir.1992). The Court determined that such orders met the *Cohen*

criteria because the doctrine's purpose of protecting state actors from burdensome litigation by providing immunity from insubstantial suits "is effectively lost if a case is erroneously permitted to go to trial." *Mitchell*, 472 U.S. at 526, 105 S.Ct. at 2815.

■ The recent Supreme Court decision of *Johnson v. Jones*, —— U.S. ——, 115 S.Ct. 2151, 132 L.Ed.2d 238 (1995), modified this jurisdictional rule. In *Johnson*, the defendants sought to appeal a denial of summary judgment based on the court's determination that there was a material factual dispute over the extent of the defendants' involvement in the alleged beating of the plaintiff. —— U.S. at —— – ——, 115 S.Ct. at 2153–54. The Court held that a defendant who invokes a qualified immunity defense may not appeal a district court's denial of summary judgment insofar as the court's order determines that the record presents a " 'genuine' issue of fact for trial." *Id.* at ——, 115 S.Ct. at 2159. The Court distinguished the situation before it from one where "purely legal matters are at issue." *Id.* at ——, 115 S.Ct. at 2158. Thus, where a court's denial of summary judgment is based on a determination that certain factual findings are essential to resolving the qualified immunity question, the denial is not reviewable under the collateral order doctrine, and courts of appeals have no jurisdiction to hear the appeal. Accordingly, our appellate jurisdiction over appeals of orders denying summary judgment is limited to "circumstances where the qualified immunity defense may be established as a matter of law or the trial court has committed fundamental error in applying the law." *Cartier*, 955 F.2d at 844 (citations omitted).

■ In its denial of the defendants' motion for summary judgment on qualified immunity grounds in the instant case, the district court held:

> The Court cannot say as a matter of law that the conduct of these officers did not violate the constitutionally guaranteed rights of the plaintiff. The record supports plaintiff's allegations that the defendants Backaus's and Gordon's conduct violated her Fourteenth Amendment rights not to be deprived of liberty or property without due process of law. Furthermore,

the contours of those rights are sufficiently clear for a reasonable person to have understood them.

This language suggests that the court denied Backaus's and Gordon's motions for summary judgment because of the unresolved question of the objective reasonableness of their actions. Inasmuch as the parties do not dispute the material facts and the court did not cite any such factual disputes, the question of the reasonableness of the officers' actions is the only question that could have prevented the court from ruling "as a matter of law" on the qualified immunity defense. However, in the absence of a material factual dispute, the question of whether it was objectively reasonable for the officers to believe that they did not violate the plaintiff's rights is a purely legal determination for the court to make. *Oliveira*, 23 F.3d at 649; *Finnegan*, 915 F.2d at 821; *Warren*, 906 F.2d at 76.

The determination challenged here does not concern the existence of genuine issues of fact; no party disputes the facts here. Rather, the appellants argue that the district court erred as a matter of law in failing to properly apply the qualified immunity standard. Because this case poses only a legal question about the objective reasonableness of the defendants' actions under undisputed facts, *Johnson* does not preclude appellate jurisdiction. Accordingly, we have jurisdiction to hear the appeal.

## B. Applying the Summary Judgment Standard for Qualified Immunity

■ In its opinion, delivered from the bench, the district court correctly stated the qualified immunity test:

> To establish [qualified] immunity, a defendant must demonstrate either that his conduct did not violate any of the plaintiff's ... clearly established rights, ... that would have been known to a reasonable person or that it was objectively reasonable for him to believe that his ... actions did not violate any of those clearly established rights.

However, the court misapplied this test in two respects. First, it placed great signifi-

cance on the fact that the record supported the plaintiff's allegations. However, the availability of qualified immunity does not turn on whether the defendants violated the plaintiff's rights; qualified immunity is a *defense*:

> We have recognized that it is inevitable that law enforcement officials will in some cases reasonably but mistakenly conclude that probable cause is present, and we have indicated that in such cases those officials—like other officials who act in ways they reasonably believe to be lawful—should not be held personally liable.

*Anderson*, 483 U.S. at 641, 107 S.Ct. at 3039.

■ Second, the court failed to conduct the required "objective reasonableness" inquiry. There is no question that the rights at issue in this case—to be free from false arrest, malicious prosecution, and excessive force—were clearly established at the time of the incident. *See, e.g., Carroll v. United States*, 267 U.S. 132, 45 S.Ct. 280, 69 L.Ed. 543 (1925) (recognizing constitutional right not to be arrested or prosecuted without probable cause); *Golino*, 950 F.2d at 870 (same); *Graham v. Connor*, 490 U.S. 386, 393–94, 109 S.Ct. 1865, 1870–71, 104 L.Ed.2d 443 (1989) (acknowledging constitutional right not to be subject to excessive force); *Posr v. Doherty*, 944 F.2d 91, 95 (2d Cir. 1991) (same). As the district court itself acknowledged, even if the plaintiff's federal rights were clearly established at the time of the alleged violation, the defendants may nevertheless enjoy qualified immunity if it was objectively reasonable for them to believe that their actions did not violate those rights. *See Robison*, 821 F.2d at 921. The court's analysis of the defendants' asserted

qualified immunity defense should not have ended with its conclusion that "the contours of [plaintiff's] rights are sufficiently clear for a reasonable person to have understood them." Thus, we apply the *Robison* standard for summary judgment in qualified immunity cases involving the "objective reasonableness" analysis, as stated in § II.A.1, to each of the plaintiff's § 1983 claims.

### 1. The False Arrest Claim

■ The plaintiff's first claim under § 1983 alleges that she was the victim of false arrest. The common law tort of false arrest is cognizable under § 1983 only if it also encompasses a violation of federal statutory or constitutional law. *Cook v. Sheldon*, 41 F.3d 73, 77 (2d Cir.1994) (citing *Easton v. Sundram*, 947 F.2d 1011, 1016 (2d Cir.1991)). Mrs. Lennon contends that Backaus and Gordon violated her Fourth Amendment right to be free from "unreasonable ... seizures" by arresting her without probable cause.[2]

■ In assessing whether Backaus and Gordon are entitled to qualified immunity on the plaintiff's false arrest claim, we must evaluate the objective reasonableness of the officers' belief that they had probable cause to arrest the plaintiff. In *Wachtler*, 35 F.3d at 80, we stated the appropriate standard:

> An arresting officer is entitled to qualified immunity from a claim for unlawful arrest if "either (a) it was objectively reasonable for the officer to believe that probable cause existed, or (b) officers of reasonable competence could disagree on whether the probable cause test was met."

---

**2.** Although Mrs. Lennon's brief refers to the Fourteenth Amendment as the source of her false arrest and malicious prosecution claims, her complaint identifies the Fourth Amendment as an additional constitutional source for her § 1983 claims. In the recent Supreme Court case of *Albright v. Oliver*, —— U.S. ——, 114 S.Ct. 807, 127 L.Ed.2d 114 (1994), six justices agreed that the Fourth Amendment was the appropriate constitutional source for § 1983 claims in unlawful arrest cases, and a plurality found it to be the appropriate source in malicious prosecution cases as well. In accordance with *Albright*, we construe Mrs. Lennon's allegations that the officers arrested her and charged her without proba-

ble cause as claims under the Fourth Amendment. *See Singer v. Fulton County Sheriff*, 63 F.3d 110, 114–116 (2d Cir.1995).

> The full text of the Fourth Amendment of the United States Constitution is as follows:
> The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

U.S. CONST. amend. IV.

(quoting *Golino,* 950 F.2d at 870). "Probable cause to arrest exists when the authorities have knowledge or reasonably trustworthy information sufficient to warrant a person of reasonable caution in the belief that an offense has been committed by the person to be arrested." *Golino,* 950 F.2d at 870 (citing *Dunaway v. New York,* 442 U.S. 200, 208 n. 9, 99 S.Ct. 2248, 2254 n. 9, 60 L.Ed.2d 824 (1979)). We turn to the elements of the offense for which Mrs. Lennon was arrested—obstructing governmental administration—to assess the objective reasonableness of the officers' belief that probable cause existed to arrest the plaintiff.

■ Section 195.05 of the New York Penal Law defines the offense of obstructing governmental administration:

A person is guilty of obstructing governmental administration when he intentionally ... prevents or attempts to prevent a public servant from performing an official function, by means of intimidation, physical force or interference, or by means of any independently unlawful act ....

The elements of obstructing governmental administration therefore include: (1) prevention or attempt to prevent (2) a public servant from performing (3) an official function (4) by means of intimidation, force or interference. *Id.* New York courts have further held that the official function being performed must be one that was "authorized by law." *In re Verna C.,* 143 A.D.2d 94, 531 N.Y.S.2d 344, 345 (2d Dep't 1988). The question of law for purposes of qualified immunity is whether it was objectively reasonable for the officers to conclude that they had sufficient information to believe that Mrs. Lennon violated § 195.05. Or, could reasonable officers disagree about whether the plaintiff was preventing or attempting to prevent an "authorized" official function by means of intimidation, force or interference? If so, the officers are shielded by immunity.

We conclude that no reasonable jury could find that, under the circumstances, it was objectively unreasonable for the officers to believe that there was probable cause to arrest the plaintiff for obstructing governmental administration. Mr. Lennon showed the police a certificate of title and a valid registration, that the officers verified with the DMV. Knowing this, Mrs. Lennon locked herself in the car and attempted to start the engine, with the evident intention of driving away. Even after she unlocked the doors, she refused to leave the car and remained in the driver's seat. Although Mrs. Lennon's attorney was on the telephone and was prepared to explain her asserted rights under the New York Domestic Relations Law, it was reasonable for Backaus in these circumstances to decline to speak with the attorney. First, Backaus was attempting to control a confrontation between the plaintiff and her husband. Second, it is not a police officer's responsibility in the midst of a street confrontation to receive phone calls from interested persons or to listen to disquisitions on the nice points of matrimonial law.

The officers' belief that they had probable cause to arrest Mrs. Lennon pursuant to § 195.05 was reasonable. Inasmuch as Mr. Lennon presented the officers with valid ownership papers, it was entirely reasonable for them to believe that they were performing an "official function" by assisting him in the recovery of his purloined property. Thus, it was reasonable in these circumstances for the officers to believe that they had the authority to order Mrs. Lennon to get out of the car. When she refused to leave the car, it was reasonable for them to construe her actions as "interference" and to arrest her for violating a statute that appeared to reach her conduct.

■ Although Judge McGrath determined that the arrest of the plaintiff was unauthorized and dismissed the charge against her—a legal conclusion which we need not assess—he did not address whether reasonable officers could disagree about the legality of the officers' conduct. The doctrine of qualified immunity serves to protect police from liability and suit when they are required to make on-the-spot judgments in tense circumstances. *See Calamia v. City of New York,* 879 F.2d 1025, 1034–35 (2d Cir. 1989) (quoting *Graham,* 490 U.S. at 396–97, 109 S.Ct. at 1872). Perhaps a rational jury could find that the officers lacked probable cause and should not have arrested Mrs. Lennon; however, in our view, a rational

jury could *not* find that the officers' judgment was so flawed that no reasonable officer would have made a similar choice. *Id.* The defendants are entitled to summary judgment on this claim.

### 2. The Malicious Prosecution Claim

The plaintiff's second § 1983 claim alleges that she was the victim of malicious prosecution. Like false arrest, this common law tort states a claim under § 1983 only if it implicates the plaintiff's federal statutory or constitutional rights. The essence of Mrs. Lennon's malicious prosecution claim is that she was charged with obstructing governmental administration without probable cause, in violation of her Fourth Amendment rights.[3]

In assessing whether Backaus and Gordon were objectively reasonable in their belief that they had probable cause to charge the plaintiff with a violation of § 195.05, we apply the same standard that we used to evaluate qualified immunity in the false arrest context. *O'Neill v. Town of Babylon,* 986 F.2d 646, 649–50 (2d Cir.1993). That is, was it objectively reasonable for the officers to believe that probable cause existed or could officers of reasonable competence disagree on whether the probable cause test was met? *Id.* (quoting *Golino,* 950 F.2d at 870).

For the reasons set forth above in our analysis of the plaintiff's false arrest claim, we find that competent officers could disagree over whether the defendants had probable cause to believe that Mrs. Lennon was obstructing governmental administration. Accordingly, the defendants were also entitled to summary judgment on this claim.

### 3. The Excessive Force Claim

The plaintiff's third § 1983 claim alleges that the defendants used excessive force in arresting her. In *Graham v. Connor,* the Supreme Court held that *"all* claims that law enforcement officers have used excessive force ... in the course of an arrest, investigatory stop, or other 'seizure' of a free citizen should be analyzed under the Fourth Amendment and its 'reasonableness' standard." 490 U.S. at 395, 109 S.Ct. at 1871. Determining whether the force used during an arrest is "reasonable" requires balancing the "nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake." *Graham,* 490 U.S. at 396, 109 S.Ct. at 1872 (internal quotation marks and citations omitted). This standard evaluates the reasonableness of the force used by considering the totality of the circumstances faced by the officer on the scene. *Id.; Anderson v. Branen,* 17 F.3d 552, 560 (2d Cir.1994). The Supreme Court has stated explicitly: " 'Not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers,' violates the Fourth Amendment." *Graham,* 490 U.S. at 396, 109 S.Ct. at 1872 (quoting *Johnson v. Glick,* 481 F.2d 1028, 1033 (2d Cir.) (Friendly, J.), *cert. denied,* 414 U.S. 1033, 94 S.Ct. 462, 38 L.Ed.2d 324 (1973)).

Backaus and Gordon maintain that they are entitled to qualified immunity on the plaintiff's excessive force claim. We have previously held in *Finnegan v. Fountain* that "the qualified immunity defense is generally available against excessive force claims." 915 F.2d 817, 822–23 (2d Cir.1990). However, that case did not present an opportunity to apply the "objective reasonableness" standard for qualified immunity. *Id.* at 824. In this instance, the question for the purposes of qualified immunity is "whether a reasonable officer could have believed that the use of force alleged was objectively reasonable in light of the circumstances." *Rowland v. Perry,* 41 F.3d 167, 173 (4th Cir. 1994); *see also Edwards v. Giles,* 51 F.3d 155, 157 (8th Cir.1995) (reversing district court's denial of summary judgment on qualified immunity grounds where force used was "objectively reasonable in the circumstances"); *Jones by Jones v. Webb,* 45 F.3d 178, 184 (7th Cir.1995) (affirming grant of summary judgment on grounds of qualified immunity where "a reasonable police officer certainly could have believed that the limited force applied was proper and was not unconstitutionally excessive in light of clearly established law").

---

**3.** *See supra* note 2.

We find that the defendants are entitled to summary judgment on qualified immunity grounds on the plaintiff's § 1983 excessive force claim. Under the particular circumstances presented here, no rational jury could have found that the force used was so excessive that no reasonable officer would have made the same choice. As we noted above, none of the material facts are in dispute. The plaintiff alleges that Backaus injured her wrist when he pulled her hand off the ignition and forcibly removed her from the car. When asked about her physical contact with Officer Backaus, Mrs. Lennon responded that "[h]e ... yanked my hand off the ignition and then told me I was under arrest and yanked me out of the car." Also, in response to an interrogatory asking her to describe the acts constituting the alleged assault by Officer Backaus, Mrs. Lennon responded, "He put his arm around my neck, shoulder, right arm and right hand." As a result of this conduct, Mrs. Lennon received hospital treatment for her wrist. She claims no other use of force and no other injury.

As the Supreme Court has noted, not every push or shove constitutes excessive force. *Graham*, 490 U.S. at 396, 109 S.Ct. at 1872. Here, there is not even a push or a shove. In order for the officers to take Mrs. Lennon into custody, she had to get out of the car. Because she would not leave the car on her own, Backaus determined that he would have to remove her forcibly. He wrapped his arm around her neck, shoulder, and arm, and pulled her from the car. The intrusion on Mrs. Lennon's Fourth Amendment rights, if any, was extremely limited. It was objectively reasonable for Backaus to believe that in pulling the plaintiff from the car to effect her arrest, he was not infringing on her Fourth Amendment rights. Under the circumstances described above, no jury could find that it was objectively unreasonable for the officers to believe that the force used to remove Mrs. Lennon from the car was not excessive.

Accordingly, we reverse the order of the district court denying the defendants' motion for summary judgment on the plaintiff's three § 1983 claims, and direct that judgments on those claims in favor of the defendants enter on qualified immunity grounds.

## C. Supplemental State Claims

Having dismissed the plaintiff's underlying federal claims, we also dismiss her supplemental state claims of assault, unlawful imprisonment, and malicious prosecution against Backaus. *See United Mine Workers of America v. Gibbs*, 383 U.S. 715, 726, 86 S.Ct. 1130, 1139, 16 L.Ed.2d 218 (1966) ("[I]f the federal claims are dismissed before trial, even though not insubstantial in a jurisdictional sense, the state claims should be dismissed as well."); *Grondahl v. Merritt & Harris, Inc.*, 964 F.2d 1290, 1294 (2d Cir. 1992) (same).

### III. CONCLUSION

To summarize:

1. We hold that we have jurisdiction to hear this appeal because no facts are in dispute. Rather, the case poses a purely legal question about the "objective reasonableness" of the defendants' actions under these facts.

2. We reverse the district court's order denying summary judgment to the defendants, and we find that they enjoy qualified immunity from the plaintiff's § 1983 suit based on false arrest, malicious prosecution and excessive force.

3. Having dismissed the plaintiff's underlying federal claims, we dismiss her supplemental state claims for lack of jurisdiction.