SOTOMAYOR, Circuit Judge, concurring:
I agree fully with the outcome of this case, and I concur with most of the majority’s reasoning; however, I disagree with its description of the qualified immunity standard we should apply and its related discussion of “arguable probable cause.” A long line of decisions of this Court features the same doctrinal misstatements, and it is time we stopped repeating uncritically this particular language and gave it the attention it deserves.[1] I join all of the majority opinion except Part 11(B)(1),[2] and I write separately to call the Court’s attention to our collective failure to harmonize our qualified immunity analysis with the Supreme Court’s directives.
The portion of the majority’s qualified immunity discussion that I find objectionable reads as follows: “If the right at issue was not clearly established by then existing precedent, then qualified immunity shields the defendant. Even if the right at issue .was clearly established in certain *166 respects, however, an officer is still entitled to qualified immunity if ‘officers of reasonable competence could disagree’ on the legality of the action at issue in its particular factual context.” Maj. Op. at 154 (quoting Malley v. Briggs, 475 U.S. 335, 341, 106 S.Ct. 1092, 89 L.Ed.2d 271 (1986)). These two sentences and the citation to Malley reveal the two flaws I see in this circuit’s approach to qualified immunity. First, our approach splits the single question of whether a right is “clearly established” into two distinct steps, contrary to Supreme Court precedent. Second, we demand a consensus among all hypothetical reasonable officers that the challenged conduct was unconstitutional, rather than positing an objective standard of reasonableness to which defendant officers should be held, as the Supreme Court has repeatedly instructed us to do. I address both of these points in turn.
The Supreme Court has made clear that “[t]he relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his [or her] conduct was unlawful in the situation he [or she] confronted.” Saucier v. Katz, 533 U.S. 194, 202, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001). That is, whether a right is clearly established is the same question as whether a reasonable officer would have known that the conduct in question was unlawful. This Court’s case law, in contrast, bifurcates the “clearly established” inquiry into two steps. See, e.g., Cerrone v. Brown, 246 F.3d 194, 199 (2d Cir.2001) (“A police officer is entitled to qualified immunity from liability for his [or her] discretionary actions if either (1) his [or her] conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known, or (2) it was objectively reasonable for him [or her] to believe that his [or her] actions were lawful at the time of the challenged act.” (emphasis added; internal quotation marks and citation omitted)). By splitting the “relevant, dispositive inquiry” in two, we erect an additional hurdle to civil rights claims against public officials that has no basis in Supreme Court precedent.
Whether a reasonable officer would know his or her conduct to be unlawful requires an inquiry into the state of the law at the time of the conduct and “in light of the specific context of the case.” Saucier, 533 U.S. at 201, 121 S.Ct. 2151. If the right at issue has not previously been articulated, or had been addressed only in a factual context that is “distinguishable in a fair way,” id. at 202, 121 S.Ct. 2151, a reasonable officer might not have known that the challenged conduct was unlawful.[3] See also id. (“ ‘[T]he right the official is alleged to have violated must have been “clearly established” in a more particularized, and hence more relevant, sense: The contours of the right must be sufficiently clear that a reasonable official would understand that what he [or she] is doing violates that right.’ ”) (quoting Anderson v. Creighton, 483 U.S. 635, 640, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987)). Contrary to what our case law might suggest, the Supreme Court does not follow this “clearly established” inquiry with a second, ad hoc *167 inquiry into the reasonableness of the officer’s conduct. Once we determine whether the right at issue was clearly established for the particular context that the officer faced, the qualified immunity inquiry is complete.
Wilson v. Layne, 526 U.S. 603, 119 S.Ct. 1692, 143 L.Ed.2d 818 (1999), illustrates the inquiry that the Supreme Court contemplates for qualified immunity. The Wilsons brought suit against law enforcement officers who permitted members of the media to accompany them in an early morning raid of the Wilsons’ home. Id. at 607, 119 S.Ct. 1692. Having concluded that the officers’ actions violated the Fourth Amendment, the Court considered whether the officers were entitled to qualified immunity. Id. at 614, 119 S.Ct. 1692. The Court explained that “what ‘clearly established’ means in this context depends largely ‘upon the level of generality at which the relevant “legal rule” is to be identified.’ ” Id. at 614, 119 S.Ct. 1692 (quoting Anderson, 483 U.S. at 639, 107 S.Ct. 3034). That is, to be clearly established, “[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he [or she] is doing violates that right.” Id. at 615, 119 S.Ct. 1692 (internal quotation marks omitted). The Court concluded that the officers were entitled to qualified immunity because it was “not obvious from the general principles of the Fourth Amendment,” id. at 615-16, 119 S.Ct. 1692, or judicial decisions that the presence of the media was unlawful, and “[g]iven [the] undeveloped state of the law, the officers ... cannot have been expected to predict the future course of constitutional law,” id. at 617, 119 S.Ct. 1692 (internal quotation marks omitted).
Wilson confirms that whether an officer’s conduct was objectively reasonable is part and parcel of the inquiry into whether the law was clearly established at the time of the challenged conduct and for the particular context in which it occurred. To ask whether an officer’s violation of an individual’s right was objectively reasonable after we have found that the right was clearly established in the particularized sense finds no warrant in Wilson, Saucier, or any other recent Supreme Court discussion of qualified immunity. See also Brosseau v. Haugen, 543 U.S. 194, 199-200, 125 S.Ct. 596, 160 L.Ed.2d 583 (2004) (per curiam); Groh v. Ramirez, 540 U.S. 551, 563, 124 S.Ct. 1284, 157 L.Ed.2d 1068 (2004); Hope v. Pelzer, 536 U.S. 730, 739-46, 122 S.Ct. 2508, 153 L.Ed.2d 666 (2002).
I suspect that our bifurcation of the “clearly established” analysis derives from the eminently reasonable principle that whether a right is clearly established “is not answered by reference to how courts or lawyers might have understood the state of the law.” Maj. Op. at 154. We do not expect law enforcement officers to keep abreast of every development in the case law or to recognize every implication of legal precedent for police conduct that courts have not previously considered. See Saucier, 533 U.S. at 205, 121 S.Ct. 2151 (“It is sometimes difficult for an officer to determine how the relevant legal doctrine ... will apply to the factual situation the officer confronts.”). But our bifurcated approach makes too much of this principle by divorcing the reasonableness inquiry from the state of the law at the time of the conduct in question. The inquiry described by the Supreme Court already incorporates a recognition that police officers should not be expected to anticipate every application of legal principles because it requires that the right be clearly established with particularity for the conduct at issue.
*168 In this case, the particularity requirement means that our “clearly established” inquiry is not complete upon reaching the indisputable conclusion that an individual has the right to be free from arrest, search, or seizure absent probable cause. See Anderson, 483 U.S. at 640-41, 107 S.Ct. 3034. Rather, we must determine whether it was clearly established that the situation the officer confronted did not give rise to probable cause. See id. at 641, 107 S.Ct. 3034 (holding that officials who “reasonably but mistakenly conclude that probable cause is present ... should not be held personally liable”); see also Saucier, 533 U.S. at 206, 121 S.Ct. 2151 (“[E]ven if a court were to hold that the officer violated the Fourth Amendment by conducting an unreasonable, warrantless search, Anderson still operates to grant officers immunity for reasonable mistakes as to the legality of their actions.”). In other words, based on the law at the time the conduct occurred, would a reasonable officer have known that his or her actions were not supported by probable cause, and therefore were in violation of the Fourth Amendment?
The majority opinion takes this question wholly outside of the “clearly established” inquiry and asks whether the officers had “arguable probable cause.” See Maj. Op. at 164. This Court has used the term “arguable probable cause” to describe the standard for finding that a defendant officer is entitled to qualified immunity for his or her reasonable but mistaken determination that probable cause existed in a particular context. See Caldarola v. Calabrese, 298 F.3d 156, 162 (2d Cir.2002) (“[I]n the context of a qualified immunity defense to an allegation of false arrest, the defending officer need only show arguable probable cause. This is because at its heart, [t]he concern of the immunity inquiry is to acknowledge that reasonable mistakes can be made as to the legal constraints on particular police conduct.” (internal quotation marks and citations omitted; alteration in original)); Cerrone, 246 F.3d at 203.[4] We have also stated that “arguable probable cause” falls under the objective reasonableness determination of our qualified immunity test. See Jenkins v. City of New York, 478 F.3d 76, 87 (2d Cir.2007). Yet reasonableness — and therefore the existence of “arguable probable cause” — are considerations that properly fall within the clearly established inquiry as the Supreme Court has described it. See Anderson, 483 U.S. at 640-41, 107 S.Ct. 3034; Brosseau, 543 U.S. at 199-201, 125 S.Ct. 596. It is not surprising, then, that “arguable probable cause” finds no mention in any Supreme Court opinion; the need for a separate term to describe this concept arises only once we have improperly splintered the “clearly established” inquiry. Because I believe “arguable probable cause” is both imprecise and an outgrowth of the first flaw in our qualified immunity analysis, I do not agree with the majority’s use of the term.
I recognize that the distinction I am drawing is a fine one, but I believe it has real consequences. Our approach does not simply divide into two steps what the Supreme Court treats singly, asking first, whether the right is clearly established as a general proposition, and second, whether the application of the general right to the facts of this case is something a reasonable officer could, be expected to anticipate. Instead, we permit courts to decide that official conduct was “reasonable” even after finding that it violated clearly estab *169 lished law in the particularized sense. By introducing reasonableness as a separate step, we give defendants a second bite at the immunity apple, thereby thwarting a careful balance that the Supreme Court has struck “between the interests in vindication of citizens’ constitutional rights and in public officials’ effective performance of their duties.” Anderson, 483 U.S. at 639, 107 S.Ct. 3034 (quoting Davis v. Scherer, 468 U.S. 183, 195, 104 S.Ct. 3012, 82 L.Ed.2d 139 (1984)).
My second objection to the majority’s formulation of the qualified immunity standard is that it treats objective reasonableness as turning on whether “officers of reasonable competence could disagree.”[5] Maj. Op. at 154. This language, which our cases frequently recite, see, e.g., Iqbal v. Hasty, 490 F.3d 143, 167 (2d Cir.2007); Cerrone, 246 F.3d at 202; Lennon v. Miller, 66 F.3d 416, 420 (2d Cir.1995), derives from the Supreme Court’s 1986 decision in Malley, 475 U.S. at 341, 106 S.Ct. 1092. Whether reasonably competent officers could disagree about the lawfulness of the conduct at issue, however, is not the same question the Supreme Court has repeatedly instructed us to consider: whether “it would be clear to a reasonable officer that his [or her] conduct was unlawful in the situation he [or she] confronted.”[6] Saucier, 533 U.S. at 202, 121 S.Ct. 2151 (emphasis added); see also Brosseau, 543 U.S. at 199, 125 S.Ct. 596 (quoting Saucier); Groh, 540 U.S. at 563, 124 S.Ct. 1284 (same); Hope, 536 U.S. at 746, 122 S.Ct. 2508 (same). As with our bifurcation of the “clearly established” inquiry, our requirement of consensus among all reasonable officers departs from Supreme Court dictates and unjustifiably raises the bar to liability for violations of constitutional rights.
Reasonable person standards are familiar constructs in the law. They define the level of prudence, care, or knowledge that the law will require of a defendant called to task for his or her actions. In the qualified immunity context, the reasonable officer embodies the minimum degree of judgment and awareness of the law that courts expect law enforcement officials to exercise in the conduct of their duties. That is, the reasonable officer standard sets the threshold beyond which a defendant officer will not be entitled to immunity. As I have discussed, to determine what conduct a reasonable officer should have known to be unlawful in the situation presented, a court must decide whether the law was sufficiently clear regarding the conduct at issue, such that the reasonable officer, and thus the defendant, would have had “fair notice that [his or] her conduct was unlawful.” Brosseau, 543 U.S. at 198, 125 S.Ct. 596.
Asking whether “officers of reasonable competence could disagree” shifts this inquiry subtly but significantly. Instead of asking whether the defendant’s conduct *170 was beyond the threshold of permissible error, as the reasonable officer standard does, this inquiry affords a defendant immunity unless a court is confident that a range of hypothetical reasonably competent officers could not disagree as to whether the defendant’s conduct was lawful. This standard is not only more permissive of defendants seeking to justify their conduct; it also takes courts outside their traditional domain, asking them to speculate as to the range of views that reasonable law enforcement officers might hold, rather than engaging in the objective reasonableness determination that courts are well-equipped to make.
The Supreme Court has specifically criticized the conflation of an objective reasonableness standard with a requirement of unanimous consensus in the context of a petition for a writ of habeas corpus. In Williams v. Taylor, 529 U.S. 362, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000), the Court interpreted the statutory provision allowing’ a federal court to grant review of a petition for a writ of habeas corpus when a state court judgment “involved an unreasonable application of[ ] clearly established Federal law,” 28 U.S.C. § 2254(d)(1). The Fourth Circuit had previously held that a state court’s adjudication involved an “unreasonable application” of federal law only if “the state court has applied federal law ‘in a manner that reasonable jurists would all agree is unreasonable.’ ” Williams, 529 U.S. at 409, 120 S.Ct. 1495 (quoting Green v. French, 143 F.3d 865, 870 (4th Cir.1998) (emphasis added)). Both the majority and plurality Supreme Court opinions rejected the Fourth Circuit’s interpretation of the “unreasonable application” standard, explaining that whether an application of the law is objectively unreasonable is a different, less stringent standard than one that asks whether reasonable jurists would unanimously find an application of law unreasonable. See id. at 409-10, 120 S.Ct. 1495 (majority opinion) (“[A] federal habe-as court making the ‘unreasonable application’ inquiry should ask whether the state court’s application of clearly established federal law was objectively unreasonable. The federal habeas court should not transform the inquiry into a subjective one by resting its determination instead on the simple fact that at least one of the Nation’s jurists has applied the relevant federal law in the same manner the state court did in the habeas petitioner’s case.”); id. at 378, 120 S.Ct. 1495 (plurality opinion) (“As Congress is acutely aware, reasonable lawyers and lawgivers regularly disagree with one another. Congress surely did not intend that the views of one such judge who might think that relief is not warranted in a particular case should always have greater weight than the contrary, considered judgment of several other reasonable judges.”).[7] Our Court similarly has adopted an unjustifiably stringent standard in the qualified immunity context by prohibiting liability for constitutional violations where a court believes that one reasonably competent officer would find the conduct at issue lawful, even if the overwhelming majority would not.
Finally, I note that although we repeat Malley’s “officers of reasonable competence” test with regularity, and it appears frequently in the decisions of other federal courts of appeals, see, e.g., Brittain v. Hansen, 451 F.3d 982, 988 (9th Cir.2006); Armstrong v. City of Melvindale, 432 F.3d 695, 701 (6th Cir.2006); Wollin v. Gondert, 192 F.3d 616, 625 (7th Cir.1999), it has not *171 appeared a second time in any majority opinion of the Supreme Court. It seems curious that we would continue to rest our qualified immunity standard on language the Supreme Court has carefully eschewed for over twenty years since Malley was decided.
In sum, the Supreme Court has struck a careful balance between the vindication of constitutional rights and government officials’ ability to exercise discretion in the performance of their duties. Our case law, in subtle but important ways, has altered this balance in favor of defendants by adding another analytic step to the qualified immunity analysis and equating objective reasonableness with unanimity among “officers of reasonable competence.” In the vast majority of cases, including this one, the particular phrasing of the standard will not alter the outcome of the qualified immunity analysis. There is no doubt in this case that a reasonable officer would believe that the arrest of Thomas Walcyzk, as well as the search of his home and the seizure of firearms found there, were lawful. Yet the effect in future cases may not always be so benign. What is more, the majority’s framework introduces unnecessary complications into an already complicated qualified immunity analysis. It is time to eliminate these complications and reconcile our qualified immunity analysis with the Supreme Court’s most recent, authoritative jurisprudence.

. To the extent the majority holds that courts may continue to rely on this language from Malley, Maj. Op. at 154-55 n. 16, I note that such a holding is unnecessary and serves no purpose in this case except to complicate the law further.

. Although I also disagree with the majority’s use of the term "arguable probable cause” and its reliance on whether "officers of reasonable competence could disagree,” Maj. Op. at 164, I join Part II(B)(2)(c)(2) of the majority opinion because I agree with its conclusion that questions of disputed' fact preclude judicial resolution of whether the officers are entitled to qualified immunity for their search of Elizabeth Walczyk’s house.

. The Supreme Court has stated, however, that the "clearly established” standard does not mean that "an official action is protected by qualified immunity unless the very action in question has previously been held unlawful,” Anderson v. Creighton, 483 U.S. 635, 640, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987), nor does the standard necessarily require that the facts of earlier cases be "materially similar” to the case under consideration, Hope v. Pelzer, 536 U.S. 730, 739-41, 122 S.Ct. 2508, 153 L.Ed.2d 666 (2002). The standard is one of “fair warning,” id. at 741, 122 S.Ct. 2508, such that "unlawfulness must be apparent” in light of pre-existing law, Anderson, 483 U.S. at 640, 107 S.Ct. 3034.

. Other courts of appeals have also used the term "arguable probable cause” in a similar way as this Court. See, e.g., Williams v. Ja-glowski, 269 F.3d 778, 781-82 (7th Cir.2001); Jones v. Cannon, 174 F.3d 1271, 1283 & n. 3 (11th Cir.1999).

. This language also appears in the majority opinion as part of the explanation of “arguable probable cause.” Maj. Op. at 164. Notably, however, by stating that ”[a]rguable probable cause exists if either (a) it was objectively reasonable for the officer to believe that probable cause existed, or (b) officers of reasonable competence could disagree on whether he probable cause test was met,” id. (emphasis added; internal quotation marks and citation omitted), this passage seems to support the argument that whether "officers of reasonable competence could disagree” is not an objective reasonableness test. In addition, by adding two steps to the qualified immunity analysis beyond whether the particular right was clearly established, the majority’s discussion of "arguable probable cause” further splinters our qualified immunity lest.

. Although Saucier does not specifically refer to the reasonable officer’s competence, I have no quarrel with the assumption that a "reasonable officer” is also a competent officer.

. This caution against transforming a reasonableness inquiry into a consensus requirement is instructive notwithstanding the plurality’s statement that the particular statute at issue was not meant to codify the standard for qualified immunity into the law of habeas review. See Williams, 529 U.S. at 380 n. 12, 120 S.Ct. 1495 (plurality opinion).